## HARRIS v. FALL.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1910.)

### No. 1,589.

1. PHYSICIANS AND SURGEONS (§ 14\*)—DEGREE OF SKILL AND CARE REQUIRED.

In undertaking the performance of a surgical operation and to give subsequent care to the case, the surgeon incurs the obligation to exercise thoughout the performance of his engagement both the ordinary care and skill of his profession in the light of modern advancement and learning on the subject, and his own best ability, skill, and care.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 21–30; Dec. Dig. § 14.\*]

2. PHYSICIANS AND SURGEONS (§ 18\*)—ACTION FOR MALPRACTICE—QUESTIONS FOR JURY.

In an action against a surgeon for malpractice in failing to properly treat and care for a wound made by a surgical operation, where there is no direct evidence to show whether defendant or other physicians or surgeons who assisted in caring for the patient after the operation was chargeable with the negligence proved, such question is one of fact for the jury, if there is circumstantial evidence from which an inference as to the one in fault may be fairly drawn.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 44; Dec. Dig. § 18.\*]

3. PHYSICIANS AND SURGEONS (§ 18\*)—ACTION FOR MALPRACTICE—EVIDENCE—LOCAL CUSTOM.

A custom of the locality or a particular hospital with respect to the care of patients after a surgical operation, the dressing of the wound, etc., cannot be shown to affect the right of a patient to recover for malpractice, where he was a stranger to the locality, and is not shown to have had knowledge or notice of the custom.

[Ed. Note.—For other cases, see Physicians and Surgeons, Dec. Dig. § 18.\*]

4. PHYSICIANS AND SURGEONS (§ 16\*)—LIABILITY OF GENERAL PRACTITIONER FOR NEGLIGENCE OF HOSPITAL ATTENDANTS.

Plaintiff, who was a resident of Ohio, employed defendant as a surgeon to treat him in Chicago in a hospital incorporated for general hospital purposes, and under the management of a board of trustees. Plaintiff came to Chicago, contracted with the hospital authorities for his room and accommodations, and received and paid for care and treatment from its regularly employed nurses and house physicians after the performance of a surgical operation by defendant, who was an independent practition-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

er, in addition to the after-care and treatment given by defendant. *Held*, that the general custom of such hospitals to furnish like service, and of reliance thereon by an independent operating surgeon and by patients therein for the usual care and after-treatment incidental to an operation, were matters within common knowledge and of which plaintiff was charged with notice, and that the mere undertaking of defendant to operate did not imply his further undertaking to be personally responsible for fault or negligence on the part of such hospital attendants, neither known to nor discoverable by him in the exercise of care and skill in the performance of his engagement.

[Ed. Note.—For other cases, see Physicians and Surgeons, Dec. Dig. § 16.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

The plaintiff in error, Dr. Malcolm L. Harris, a surgeon of Chicago, was defendant below, in an action brought by Frederick E. Fall, the defendant in error, for alleged malpractice, which resulted in a verdict and judgment for $4,000 damages against Dr. Harris. This writ of error is sued out for review thereof, with an extended assignment of errors. All questions raised, however, which are deemed essential, are mentioned in the opinion, together with the pertinent facts. Reversed.

O. W. Dynes and James M. Sheean, for plaintiff in error.

C. Arch Williams and F. S. Loomis, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge. In this action the defendant below, Dr. Harris, is charged with malpractice in a surgical operation and subsequent treatment, all performed at Chicago Policlinic Hospital. The direct evidence of facts in the case appears in testimony which is free from conflict in most particulars, and the verdict in favor of the plaintiff rests on deductions from such facts. Numerous errors are assigned for review—mainly in rulings upon evidence received or offered and instructions to the jury given or refused—but on examination we believe no reversible error appears, unless it arises out of one of the instructions upon the law of the case. Extended discussion of the several rulings complained of, aside from the instruction referred to, is deemed unnecessary, either for purposes of a new trial or otherwise; and remarks upon leading exceptions will serve for disposition of the others, without specific mention.

The plaintiff, Fall, resided at Toledo, Ohio, was suffering with an ailment, and had been under treatment of Dr. Haskins, of that place, for several months. Believing the trouble to be caused by stone in the right ureter, Dr. Haskins advised an operation by the defendant, Dr. Harris (whom he knew both personally and by reputation as a surgeon of skill), and was authorized by the patient to correspond with Dr. Harris to that end. An arrangement was made accordingly for Dr. Harris to attend to the case, at Chicago, in the Policlinic Hospital. Dr. Haskins and Fall proceeded to Chicago, obtained place in the hospital November 16, 1904, and Dr. Harris operated on November

17th. Finding no ureteral stone, further exploration was postponed, as Dr. Harris states, "to study the case further before attempting any more radical means"—Fall remaining at the hospital under care of Dr. Harris, and Dr. Haskins returning to Toledo.

In the course of several weeks, the developments were deemed sufficient by Dr. Harris to require another operation. He sent word accordingly to Dr. Haskins, who then returned to Chicago to be present, and the second operation was performed by Dr. Harris at the hospital January 12, 1905. On this occasion two incisions were made—one in front, reopening the first wound, and ascertaining that the ureter had parted, and the other in the back for removal of the right kidney, which was accomplished.

The present controversy arises out of the last-mentioned operation for removal of the kidney and ensuing treatment of the wound, as the evidence establishes that at some stage of treatment a band of gauze used therein was deposited and left in the kidney cavity, causing serious disturbance, until removed long afterwards, through another operation; and the prior transactions referred to are pertinent only by way of proving the continuous relation which existed between Dr. Harris and the patient, put in issue by the defendant. While several other surgeons and attendants were present during the operation, removal of the kidney, and immediate treating and dressing of the wound, it is undisputed that Dr. Harris personally attended to all of these proceedings, with the usual incidental service of the attendants. In reference to the treatment, Dr. Harris testifies that he "used fabrics to clean out the wound," but left "nothing in the wound" when finished; that he then "packed with drainage," by inserting successively strips of gauze, by means of an instrument, with the first strips reaching "the bottom of the cavity," the next "two inches further up" and so graduating their locations; that he thus "put in five or six" strips—making no count or record of the exact number—each strip for such use being seven or eight inches wide and a yard long; that the outer end of each strip was held in a clamp during the process and each end remained outside the wound, for removal at the next dressing; and that he then sewed up the wound, leaving an opening for packing "two to two and one half inches in length," and then "put on the outside dressing." Other witnesses place the length of the opening thus left at one inch and give different recollections of the number of strips inserted in the wound. Thereafter Fall remained at the Policlinic Hospital until March 2, 1905, under the charge of Dr. Harris, who made frequent examinations of wound and dressings, and on occasions attended to the dressing; but generally Dr. Hamill or Dr. Lane, internes of the hospital, attended to the packing and dressing under instructions given them by Dr. Harris. The testimony is conflicting whether Dr. Harris personally attended to the first packing and dressing, after the day of the operation, and how many strips were then found and removed from the wound. Throughout Fall's stay at the hospital the wound remained open and unhealed, discharged pus, and gave much uneasiness, but he was assured by Dr. Harris that all was going well;

and on March 2d, under approval of Dr. Harris, Fall was removed to a Toledo Hospital.

At Toledo Dr. Haskins attended to the drainage and dressing; and after about two months, on consultation with Dr. Randolph, a Toledo surgeon of skill, it was concluded that the conditions required another operation. On June 3d a letter was sent to Dr. Harris, informing him of their opinion and asking advice, but his absence delayed a reply, so that Dr. Randolph operated on June 15th. This operation disclosed in the kidney cavity "a large piece of gauze" (as described by Dr. Randolph) and "the granulated tissue had filled up pretty well," so that he had to "curette it" for removal of the bunch of gauze, which was found to be of the size and description used for drainage packing. After such removal discharges of pus ceased and the wound healed, so that Fall's recovery had progressed favorably.

The foregoing summary necessarily omits mention of many circumstances in evidence and expert opinions, which may bear upon the issue of personal responsibility for thus leaving the gauze in the kidney cavity; but all such testimony makes for the weight of evidence one way or the other, a matter not reviewable here, and therefore not open to consideration.

The desirability or need of the operation and removal of the kidney is not within the issue; nor is it questionable that Dr. Harris was of excellent repute for skill in surgery, and that the removal was skillfully performed. Neither the fact of his undertaking to operate, and as well to attend personally to the immediate treatment and give subsequent care at the hospital, nor the matter of compensation therefor, are open to dispute under the testimony. If any issue arises upon the actual undertaking for care of the case, it is in reference to service on the part of the hospital internes. The Chicago Policlinic Hospital was incorporated for general hospital purposes, neither owned nor controlled by Dr. Harris, although he was a member of the faculty and of the board of directors. His patients were frequently sent and received there for operations by him and for subsequent treatment, making their own arrangement for hospital accommodations. Neither of the internes at the hospital was an independent employé or servant of Dr. Harris, nor of his selection or under his charge, otherwise than through their presence in the hospital service. Dr. Harris informed Fall, through a letter to Dr. Haskins answering the inquiry, that "the expense at the hospital varies from eight to twenty dollars a week, according to the room," and Fall entered the hospital at a $12 rate, which was paid during his stay, but was not informed what was included therein.

In undertaking this professional work, the obligation was incurred by Dr. Harris to exercise throughout the performance of his engagement both "the ordinary care and skill of his profession, in the light of modern advancement and learning on the subject" and his own best ability, skill, and care. Gillette v. Tucker, 67 Ohio St. 106, 134, 65 N. E. 865, 93 Am. St. Rep. 639, 643, and notes; Ballou v. Prescott, 64 Me. 305; Williams v. Gillman, 71 Me. 21; Lawson v. Conaway, 37 W. Va. 159, 168, 16 S. E. 564, 18 L. R. A. 627, 38 Am. St. Rep. 17, 24; Akridge v. Noble, 114 Ga. 949, 41 S. E. 78. That the facts stated,

therefore, establish a case of malpractice and serious injury, well within the rule, if Dr. Harris was responsible for leaving the gauze in the kidney cavity, is unquestionable; and, while it is not disputed that he would be answerable for any personal negligence proven, the main propositions for denial of liability are that no such personal negligence in operation or treatment is established by proof; that Dr. Harris is neither charged in the declaration for negligence of other participants in the treatment, nor liable in any event therefor; and that the verdict is predicated on liability for such negligence of other "independent contractors."

The first error assigned is for denial of motions to direct a verdict. It is urged under the first above-mentioned proposition substantially as follows: That the fault of leaving the gauze in the wound is attributable, either equally or with more probability, to one or another of the hospital surgeons (internes) or to Dr. Haskins; and that it thus calls for a "sheer guess" by the jury to name the guilty party, and authorizes no finding against Dr. Harris. We believe this proposition to be untenable, both in premise and conclusion. It assumed to invade the province of the jury, to fix the weight to be given the facts directly proven, and thereupon to set aside the elementary doctrine of circumstantial proof, with deductions therefrom of the ultimate fact. While it is true that no admission of fault appears from the lips of either party referred to, and that there is no direct testimony that either one committed the fault in person, nevertheless the truth may be ascertainable from facts and versions which are in evidence; and (without comment on the circumstances) we are content to overrule the claim that the facts here in evidence are insufficient to that end. The inquiry is one purely of fact (for the jury), both to find the circumstances which appear from credible testimony and the reasonable deductions of fact; and the motions were rightly denied.

Error is assigned on a number of rulings by the trial court in the admission and exclusion of testimony, but we believe none of these rulings to be erroneous. The only one which seems to require mention is the exclusion of testimony proffered by the defendant to show "that at the time and place of the treatment by defendant of plaintiff it was the custom of reasonably careful" surgeons in treating similar cases to leave the "subsequent care of patients in the matter of dressing, packing, and unpacking of such wounds to the house doctor." In each form of tender the proof of custom was thus limited either to Chicago or to the hospital in question—not a general custom. The rule is elementary that such local custom cannot enter into the contract made with a stranger to locality and custom without evidence tending to show notice; and, no offer appearing to prove that either the plaintiff or Dr. Haskins, who represented him in the arrangement, was familiar with the alleged local custom, the exclusion was not erroneous. The further tender, which was ultimately incorporated in the written proffer (as filed nunc pro tunc), to prove that the house physicians "were of ordinary skill," etc., requires no discussion in the foregoing view.

The only other assignments requiring mention relate to instructions to the jury, given and refused. No exception appears to those which were given aside from one paragraph, nor do we believe they are other-

wise erroneous or wanting in fair presentation of the issues. We believe the paragraph referred to states an erroneous rule of liability, but have hesitated over the inquiry whether it must be treated as prejudicial error under the undisputed circumstances in evidence. Our conclusions are that prejudice must be presumed and reversal directed accordingly. The paragraph reads:

"The defendant has claimed that even though plaintiff did carry the gauze from Chicago in his body when he left here in March that the defendant is not to be held responsible for that, unless it appears that the defendant was responsible for allowing the plaintiff to go away from here with the gauze in his body as distinguished from the house surgeon, who the testimony shows participated in the treatment of and care of the plaintiff during his entire stay at the Policlinic Hospital. But on that question I charge you as a matter of law that the defendant in this case cannot defend himself by saying that what was negligently done to this plaintiff, if negligence there was, is attributable to some one or more of the house surgeons at the Policlinic Hospital. It was his case, and he must discharge his obligation to the plaintiff under the facts in this case as if he had no house physician associated with, or participating with, him in the care and treatment of this plaintiff."

This instruction cannot be upheld on the theory that Dr. Harris may be liable for failure to trace the pus discharges and other ill conditions of the wound to the presence of the foreign substance, so that exercise of due care required its removal before the patient left his charge. If submission in that view were admissible under either count of the declaration, then the question whether failure to discover and remove the cause was due to want of reasonable care on the part of Dr. Harris, was one of fact for the jury to determine from all the testimony under instruction to that effect; and no such distinct submission appears, either in the paragraph quoted or elsewhere in the charge. Moreover, we do not understand the declaration to charge such malpractice, although we believe the objection to be untenable, as raised in the brief of counsel, that the declaration is insufficient to include any negligent conduct therein of the hospital physicians (as assumed), which may be chargeable directly to Dr. Harris.

Support for the instruction, therefore, rests on this proposition: That the engagement of Dr. Harris, under the circumstances in evidence, conclusively implies his obligation, not only to perform and complete the operation—which, as defined in Akridge v. Noble, 114 Ga. 949, 41 S. E. 78, "begins when the opening is made into the body and ends when this opening has been closed in a proper way after all appliances necessary to the successful operation have been removed from the body"—but to attend, either personally to all care, dressings and treatment required, or employ professional assistants therefor, until recovery or discharge from such care. We believe no such undertaking on the part of Dr. Harris can reasonably be presumed under the evidence, and that it is without sanction under any authority called to attention. The proposition ignores these potent facts: The patient entered the Policlinic Hospital, contracted there for his room and accommodations, and received care and treatment from its nurses and house physicians throughout his stay, for which he made weekly payments; and the hospital was incorporated for general hospital purposes, under management of a board of trustees, was neither owned

nor controlled by Dr. Harris, nor were the house physicians selected or engaged by him, nor within his control, except as their services were tendered as part of the hospital service. We believe, moreover, that proof of local custom in respect of such hospital service was not needful; that the general custom of incorporated general hospitals in like localities, to furnish like service, and of reliance thereon by an independent operating surgeon and by patients therein for the usual care and after-treatment incidental to an operation, are matters within common knowledge and entitled to notice accordingly. In Baker v. Wentworth, 155 Mass. 338, 29 N. E. 589, this custom in respect of nurses is recognized, and the operating surgeon held exempt from liability for negligence of the nurses, although the patient supposed (in the absence of representations) that the hospital was owned by the surgeon; and in Perionowski v. Freeman, 4 Foster & F. 977, 980, Cockburn, C. J., remarked upon the practice (there proven) of surgeons to leave care of their patients in various details to the hospital nurses that such practice was "indispensable," and the operating surgeon was not liable for their negligence. So, these hospital attendants, known as "internes" (usually young physicians), are furnished at the general hospitals to attend to the ordinary work of dressing and treating the wound (left by an operation) on the way to recovery; and the mere undertaking of the surgeon to operate, under call or engagement therefor, cannot, as we believe, imply his further personal undertaking for the ordinary details of after-treatment, to make the doctrine of respondeat superior applicable, to charge him for fault or negligence on the part of such hospital attendants, neither known nor discoverable by the surgeon in the exercise of care and skill throughout his engagement. No doubt is entertainable, however, that the professional undertaking in the case at bar extended as well to the subsequent visits, observations, and personal treatment in evidence with the attendant obligation for the exercise of skill and care therein.

We are of opinion, therefore, that the above-quoted instruction was erroneous; and the judgment is reversed, and the cause remanded accordingly for a new trial.