# GUY L. HUNNER

## *vs.*

# BERTHA STEVENSON AND CHARLES STEVENSON, HER HUSBAND.

*Surgeons: not liable for after-treatment; negligence of the attendants at hospital not under his control. Pleading: pleas; various facts as defenses.*

An operating surgeon who is employed by a patient to operate upon him at a hospital, not owned by the surgeon and not under his control, is not responsible for the negligence of the hospital physicians, nurses or internes in the dressing of the wound after the operation, provided the surgeon did not know of, or was not privy to, such negligence, and provided the negligence was not discoverable by him by the use of ordinary care.
p. 62

In such a case, whether the operating surgeon was careless or not, is a question for the jury. pp. 66, 67

A. employed a surgeon to perform an operation upon her at a hospital of her selection, and independent of the surgeon's control; certain injuries were received by her because of strips of gauze and rubber which were carelessly left within the incision after the operation; A. brought suit against the surgeon. It was *held,* that evidence as to the custom, and the care and after-treatment of patients operated on at general hospitals was admissible. p. 64

The mere fact that matters set up in a plea could have been offered in evidence, under the general issue plea, does not make the plea bad. p. 63

Where a plea sets up various facts, not as for several grounds of defense, but as all applicable to one defense, the plea is not bad for duplicity. p. 63

Such a plea has a tendency to present the real issue in the case much better than simply relying on the general issue plea, and is fair to the plaintiffs.                          p. 63

*Decided December 3rd, 1913.*

Appeal from the Superior Court of Baltimore City (HEUIS-LER, J.).

The facts are stated in the opinion of the Court.

The following are the prayers that were offered by the plaintiff and defendant, and the action of the trial Court upon the same:

*Plaintiff's First Prayer*—The Court instructs the jury if they find that Bertha Stevenson suffered from a diseased kidney, and that the defendant was a physician and surgeon and as such undertook to treat the said Bertha Stevenson, and entered upon said treatment, then the defendant was bound to possess and exercise reasonable and proper care and skill in his treatment of and attendance upon the said Bertha Stevenson in the preparatory stages thereof; in the actual operation, if any, he undertook and performed, and in the subsequent stages thereof, and down to the period of her discharge by him.

And if the jury find that the defendant did not exercise reasonable and proper care and skill in his treatment of and attendance upon the said Bertha Stevenson in the premises, and that by reason of such failure on the part of the defendant to exercise such reasonable and proper care and skill in his treatment of and attendance upon the said Bertha Stevenson in the premises, certain foreign substances introduced into her body in the course of such treatment were lost in her body and remained therein for a considerable time after she was discharged by the defendant and sent to her home, if the jury so find; and that because of the presence of such foreign substances within the body of the said Bertha Stevenson the wound in her body, made necessary by the operation so

as aforesaid performed by the defendant, kept open and did
not heal; and that after she was so discharged by the defend-
ant and sent to her home some portion of such foreign sub-
stances was removed by traction from said open wound in
her body, and some further portion thereof was by process
of nature expelled therefrom; and that thereafter and because
of the premises the said Bertha Stevenson was obliged to
undergo further treatment and operation in respect of such
open and unhealed wound, and that directly because of such
failure on the part of the defendant to exercise reasonable
and proper care and skill in the premises the said Bertha
Stevenson suffered pain and became sick and disordered,
then the verdict of the jury should be in favor of the plain-
tiffs. (*Granted.*)

*Plaintiff's Second Prayer*—If the jury find for the plain-
tiffs, then in estimating the damages they may allow such
sum as will be a reasonable compensation for such injury,
if any, as they may find was occasioned the said Bertha
Stevenson by the want of reasonable and proper care and
skill on the part of the defendant in his treatment of her;
and also for such mental and physical pain, if any, as they
may find she suffered by reason of such want of reasonable
and proper care and skill on the part of the defendant in
such treatment. (*Granted.*)

*Defendant's First Prayer*—The Court instructs the jury
that there is no evidence in this case legally sufficient to
entitle the plaintiff to recover, and their verdict must be for
the defendant. (*Refused.*)

*Defendant's Second Prayer*—The Court instructs the jury
that the plaintiff has produced no evidence legally sufficient
under the pleadings to show that the injury complained of
by the female plaintiff is due to the negligence, want of skill
or diligence on the part of the defendant, Dr. Hunner, and
the verdict must be for the defendant. (*Refused.*)

*Defendant's Third Prayer*—If the jury find from the evi-
dence that the defendant was requested by the female plain-

tiff or by Dr. Friedenwald on her behalf, to operate on her for kidney trouble, and the said defendant, with the assistance of the surgeons of the hospital staff of the Union Protestant Infirmary in pursuance of said request did attend upon and operate on the female plaintiff at the Union Protestant Infirmary for kidney trouble, and that said operation was reasonably proper to be performed and was performed with reasonable care and skill, then their verdict must be for the defendant.  (*Refused.*)

*Defendant's Fourth Prayer*—The degree of care and skill to be exercised by physicians and surgeons in the performance of an operation is not the highest degree of care and skill known to the profession, but that reasonable degree of care and skill which physicians and surgeons ordinarily exercise in the treatment of their patients; and the burden of proof is on the plaintiffs in this case to establish by preponderating evidence a want of such ordinary care and skill in performance of the operation and attendance upon the said female plaintiff.  (*Granted.*)

*Defendant's Four and One-half Prayer*—The Court instructs the jury that if they find that the defendant exercised in his treatment, operation and attendance upon the plaintiff that reasonable degree of care and skill which physicians and surgeons ordinarily exercise in the treatment of their patients, they must find for the defendant, even though they further find that the foreign substances, mentioned in the evidence which were taken from or emitted from the wound of the plaintiff were left in there by the defendant and that in consequence thereof, or of the operation and treatment the plaintiff was damaged.  (*Refused.*)

*Defendant's Fifth Prayer*—That in order to recover against the defendant under the pleadings in this case, the plaintiff must show by a preponderance of evidence that (1) Dr. Hunner in operating upon Mrs. Stevenson or in dressing her wounds after the operation personally left the foreign substance mentioned in the testimony in her wound

after said wound was closed, or (2) That his employees so left it in, or (3) That he directed or authorized it to be so left in. (*Refused.*)

*Defendant's Sixth Prayer*—That under the pleadings in this case the burden of proof rests upon the plaintiff to show by a preponderance of evidence satisfactory to the jury that the defendant, Dr. Hunner, treated and operated upon the plaintiff, Mrs. Stevenson, negligently, carelessly or unskilfully, and in consequence whereof a considerable quantity of gauze or other foreign substance remained in the plaintiff's abdominal cavity after said treatment and operation, and after the wounds made by the operation were closed by the defendant, Dr. Hunner, or under the direction or by his authority, and that she was thereby injured. (*Refused.*)

*Defendant's Seventh Prayer*—If the jury shall find from the evidence that the plaintiff entered the Union Protestant Infirmary, and contracted there for her accommodations and received care and treatment from its nurses and house physicians throughout her stay, and that the hospital was neither owned nor controlled by Dr. Hunner, nor were the hospital surgeons selected or engaged by him, nor within his control, except as their services were tendered as part of the hospital service, that Dr. Hunner carefully and skilfully operated on the plaintiff at said hospital, assisted by the house surgeons employed as aforesaid by said infirmary and packed the said wounds and dressed the said wounds with reasonable skill and care four times and left to the hospital surgeon in charge of patients in said infirmary all the other dressings and after-treatment of her wounds left by the said operation subject to his general supervision; that the defendant was justified in relying on the hospital employees to give proper service to the plaintiff, and he cannot be held responsible for the faults or negligence (if any) on the part of said hospital employees, neither known to him, nor discoverable by him (if the jury so find) in the exercise of reasonable

care and skill throughout the plaintiff's stay following said. operation in the Union Protestant Infirmary. (*Refused.*)

*Defendant's Eighth Prayer*—The undisputed evidence in this case shows that the female plaintiff applied for admission as a patient at the Union Protestant Infirmary of Baltimore, and a public general hospital for the care and treatment of medical and surgical cases, and that she was received as a patient in said hospital, and contracted for her bed and accommodations there, and accepted the services of the hospital nurses, surgeons and attendants; and that said hospital was not owned by the defendant or under his management or control, and that the plaintiff went to said hospital at the suggestion of Dr. Madara and Dr. Friedenwald, and thereafter at the request of Dr. Friedenwald, the defendant visited the female plaintiff, and observed her symptoms, and diagnosed her trouble, and with the consent of the female plaintiff operated upon her at said hospital on both sides to relieve the trouble from which she suffered, and removed a portion of one kidney, and that the defendant was assisted in said operation by the doctors and nurses who were in the regular employ of said hospital, and whose duty it was to aid in operations upon patients in said hospital; and that the defendant was not negligent, careless or unskilful in the performance of said operation; and that the defendant was not negligent, careless or unskilful in the treatment following said operation, personally applied by himself, or applied under his personal supervision and that four times after said operation the defendant personally dressed the female plaintiff's wounds with skill and care; and that the female plaintiff only needed the ordinary and conventional hospital nursing and attention including the dressing of the wounds following the operation; and that thereafter the defendant intrusted the dressings on or in said wounds to be done and applied by the surgeons provided for the purpose by the Union Protestant Infirmary and employed by said hospital, and that said hospital employees were capable of making

said dressings and giving the female patient proper care and attention in the premises, and that the employees of the hospital were not under the control of the defendant, except as their services were tendered and accepted as a part of the general hospital service, and that the progress of the female patient following the operation toward recovery was normal while she remained as a patient in said hospital, and that the defendant had no knowledge and no circumstance to put him on notice throughout her stay at said hospital that the female plaintiff received any negligent, careless, unskilful or wrongful treatment, as alleged, at said hospital, and that he did not personally direct, authorize or participate in any such alleged negligent, careless or unskilful treatment of the female plaintiff in the treatment and dressing of her wounds in said hospital, and that it is the practice of surgeons of ordinary skill, knowledge, diligence and care in operations performed by them at general hospitals in this section to intrust the dressings, care and treatment of wounds following operations such as were performed on the female plaintiff to the doctors, surgeons and attendants provided by such hospitals for that purpose; and the verdict must be for the defendant. (*Refused.*)

*Defendant's Ninth Prayer*—If the jury shall believe from the evidence that it is the practice among reasonably careful, diligent and skilful surgeons to operate upon patients at general hospitals and infirmaries in this section which employ nurses, internes and surgeons for the purpose of caring for patients in such hospitals and infirmaries; and to attend to the ordinary details of after-treatment and of dressing wounds left by operations, and that such surgeons after operating to intrust the ordinary details of after-treatment and of dressing wounds left by operations to the surgeons and attendants provided by such hospitals, and that the defendant, Dr. Hunner, operated upon and treated the plaintiff, Mrs. Stevenson, without any negligence or want of skill or care in so doing, until the third day following the operation at the

Union Protestant Infirmary; when he dressed the said
wounds, and thereafter dressed the said wounds twice, if the
jury so find—without any negligence or want or skill or
care in so doing; and visited her from time to time, exam-
ining her outer wounds on such occasions and looked at and
probed the wound the day before her discharge from said
infirmary, but did not otherwise personally change or person-
ally supervise the change and removal of the dressings in the
wound; and that the plaintiff, Mrs. Stevenson, apparently
made normal progress towards recovery; and continued to
do so throughout her stay, and needed no special treatment
other than the usual and ordinary nursing and attention
including the dressing of her wounds; and that the plaintiff
entered the Union Protestant Infirmary as a patient and
contracted for her accommodations there before said opera-
tion and treatment by Dr. Hunner, and as a patient accepted
the services and attention of the hospital nurses, surgeons
and attendants; and that the Union Protestant Infirmary is
a hospital for the care and treatment of medical and surgical
cases, employing nurses, doctors, surgeons and attendants,
and is not owned or controlled by the defendant; and that
the surgeons and attendants in the employ of said Union
Protestant Infirmary are not under the authority or control
of the defendant, except as their services may be tendered
and accepted as a part of the general hospital service (if the
jury so find) that the defendant, Dr. Hunner, was justified in
intrusting the after-treatment, care and dressings of Mrs.
Stevenson's wounds following the operation after the last
dressing he personally made to the surgeons provided for
the purpose by the Union Protestant Infirmary and the
defendant is not responsible for any negligence or want of
care in the treatment of the plaintiff on the part of the
employees of the hospital, not authorized by him, or known
to him.  (*Refused.*)

*Defendant's Tenth Prayer*—If the jury shall find from the
evidence in this case that the female plaintiff applied for

admission as a patient at the Union Protestant Infirmary of
Baltimore, and that it is a public general hospital for the
care and treatment of medical and surgical cases, and that
she was received as a patient in said hospital, and contracted
for her bed and accommodations there, and accepted the
services of the hospital nurses, surgeons and attendants and
that said hospital was not owned by the defendant or under
his management or control, and that the plaintiff went to
said hospital at the suggestion of Dr. Friedenwald, and there-
after at the request of Dr. Friedenwald the defendant visited
the female plaintiff, and observed her symptoms and diag-
nosed her trouble, and with the consent of the female plain-
tiff operated upon her at said hospital on both sides to relieve
the trouble from which she suffered, and removed a portion of
one kidney, and that the defendant was assisted in said oper-
ation by the doctors and nurses who were in the regular
employ of said hospital and whose duty it was to aid in
operations upon patients in said hospital; and that the defend-
ant was not negligent, careless or unskilful in the perform-
ance of said operation; and that the defendant was not negli-
gent, careless or unskilful in the treatment following said
operation, personally applied by himself, or applied under
his personal supervision; and that the female plaintiff was
then making a normal recovery and needed the ordinary and
conventional hospital nursing and attention including the
dressing of the wounds following the operation; and that
thereupon the defendant usually intrusted the routine dress-
ings on or in said wounds to be done and applied by the
surgeons provided for the purpose by the Union Protestant
Infirmary and employed by said hospital, and that said hos-
pital surgeons were capable of making said dressings and
giving the female patient proper care and attention in the
premises, and that the employees of the hospital were not
under the control of the defendant, except as the services
were tendered and accepted as a part of the general hospital
service, and that the progress of the female patient follow-

ing the operation toward recovery was normal while she remained as a patient in said hospital, and that the defendant had no knowledge and no circumstance to put him on notice throughout her stay in said hospital that the female plaintiff received any negligent or careless treatment, as alleged, at said hospital, and that he did not personally direct, authorize or participate in any such alleged negligent or careless treatment of the female plaintiff in the treatment and dressing of her wounds in said hospital, and that it is the general practice of surgeons of ordinary skill, knowledge, diligence and care in operations performed by them at general hospitals in this section to intrust the dressings, care and treatment of wounds following operations such as were performed on the female plaintiff to the doctors, surgeons and attendants provided by such hospitals for that purpose; the verdict must be for the defendant. (*Refused.*)

*Defendant's Eleventh Prayer*—If the jury shall believe from the evidence that if the established practice among reasonably, careful, diligent and skilful surgeons of this section in operating upon patients at general hospitals and infirmaries which employ nurses, internes and surgeons to usually permit the hospital surgeons to attend to the ordinary details of after-treatment of dressing wounds left by operations such as was performed on the female plaintiff in this case that the defendant was not negligent in leaving Mrs. Stevenson in the care of the internes and surgeons employed by the Union Protestant Infirmary, a general hospital (if the jury so find) to attend to the ordinary work of dressing and treating her wounds under the defendant's general supervision after the operation upon her (if the jury so find) and the defendant is not responsible for the negligent act, if any, of the said hospital or of its employees in the care and dressing of Mrs. Stevenson's wounds, unless the jury shall find that the negligent act of the said hospital, or its employees (if any) was known to the defendant or discoverable by him in the exercise of ordinary care. (*Refused.*)

*Defendant's Twelfth Prayer*—If the jury believe from the evidence that the female plaintiff was a patient at the Union Protestant Infirmary of Baltimore; and that the said infirmary is used and operated as a public general hospital for the treatment of medical and surgical cases, and was not owned by the defendant or under his management or control; and that thereafter the defendant was engaged to examine said plaintiff by her or by her physicians for the purpose of ascertaining the cause for the illness and suffering she complained of; and that the defendant after making a careful and skilful examination (if the jury so find) was of the opinion that the plaintiff was then and there suffering from grave and serious kidney trouble, which could not be relieved except by an operation; and that the defendant with the consent of the plaintiff on or about the 20th day of June, 1910, operated at said Union Protestant Infirmary on the plaintiff on both sides, for the relief of her said kidney trouble, and removed a part of the plaintiff's right kidney, and packed and dressed the wounds then and there made, and thereafter on or about the third day dressed the said wounds for the first time following the said operation, and that the defendant was not negligent, careless or unskilful in performing said operation, or in packing and dressing the wounds then and there made, or in making the dressings following the operation personally applied by him or under his personal direction and that the plaintiff continued as a patient at said infirmary, was making normal progress on the third day following the operation and in need of only routine surgical attention, and continued throughout her stay at said hospital to make normal progress, he was justified in leaving the after-treatment and dressings of the plaintiff's wounds to the surgeons in the regular employ of the said Union Protestant Infirmary, and the verdict must be for the defendant, notwithstanding the jury may also believe that a piece of gauze packing and rubber protective coat was lost or left in the plaintiff's wound at sometime during the after-treatment

thereof, unless the jury shall also find from the evidence that the defendant knew or in the exercise of reasonable skill, diligence and care ought to have known of the presence of said foreign bodies in said wound.    (*Refused.*)

*Defendant's Thirteenth Prayer*—The Court instructs the jury that there is no evidence in this case of the extent of the employment by the plaintiff of the defendant, except the services which were actually rendered by the defendant to the plaintiff in diagnosing her disease of her kidneys and operating upon the same and the actual personal attendance by him to her thereafter and, therefore, if the jury shall find that the services which he rendered were performed with that reasonable degree of care and skill which surgeons and physicians ordinarily exercise in operating upon and treating their patients they must bring in their verdict for the defendant. (*Refused.*)

*Defendant's Fourteenth Prayer*—The Court instructs the jury that if they shall find that the Union Protestant Infirmary is a public hospital and that the plaintiff voluntarily secured accommodations at said hospital for the purpose of being operated upon in the month of June, 1910, and that the defendant in this case undertook and did operate upon the plaintiff at her request in said month at said hospital, and that in said operation and in his prior and subsequent attendance and treatment of the plaintiff the defendant exercised that reasonable degree of care and skill which is ordinarily exercised by physicians and surgeons in operating upon and treating their patients, they shall find for the defendant, even though they believe from the evidence that while at said hospital the employees thereof inserted a drain in the wound leading into the plaintiff's kidneys made of gauze and rubber protective and failed to remove the same prior to the plaintiff's discharge from the hospital and that in consequence thereof the plaintiff was damaged. (*Refused.*)

*Defendant's Fifteenth Prayer*—The Court instructs the jury that the defendant in this case is responsible only for

failure of duty on the part of himself to exercise that reasonable degree of care and skill which physicians and surgeons ordinarily exercise in operating upon and treating their patients and that he is not responsible for the acts or omissions of the employees of the Union Protestant Infirmary, and that if the jury shall find that the defendant exercised in operating upon and treating the plaintiff the degree of care and skill aforesaid they must find their verdict for the defendant. (*Refused.*)

*Defendant's Sixteenth Prayer*—The Court instructs the jury that there is no evidence legally sufficient in this case to entitle the plaintiff to recover any damages for or on account of the foecal fistula or hole in the bowel, from which it is alleged she suffered, even if they find she suffered from the same, and that they must totally disregard the *foecal fistula* as an element of damages in this case, even though the verdict be for the plaintiff. (*Refused.*)

*Defendant's Seventeenth Prayer*—The Court instructs the jury that there is no legally sufficient evidence in this case to entitle the plaintiff to recover any damage for or on account of the pulmonary tuberculosis from which it is alleged she is now suffering, even if they find she is suffering from same, and that they must totally disregard her present tubercular condition as an element of damage in this case, even though the verdict be for the plaintiff. (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Samuel K. Dennis* and *Thomas G. Hayes,* for the appellant.

*T. Alan Goldsborough* and *William Colton,* for the appellees.

Boyd, C. J., delivered the opinion of the Court.

The declaration filed in this case by the appellees against the appellant contains two counts. The first alleges that the defendant (appellant), undertook for a fee or reward to be paid him to attend and treat some kidney trouble from which the female plaintiff was suffering; that the defendant (appellant), attended and treated her negligently, carelessly and unskillfully, whereby she is seriously and permanently afflicted, etc. The second count alleges that the defendant was a practicing physician and surgeon, holding himself out as a specialist in the treatment and cure of kidney trouble and disturbance, and then, after some formal allegations as to his employment, etc., it is further alleged, "and the plaintiffs say that the defendant, in the treatment and operation of the female plaintiff in the premises, did not treat her and operate upon her with care, diligence and skill, but treated and operated upon her in the premises, negligently, carelessly and unskillfully, in consequence whereof a considerable quantity of gauze or other foreign substance remained and continued in the abdominal cavity of the female plaintiff after said treatment and operation, and after the incision and wounds made and occurring during such treatment and operation were sewed up and closed by the defendant, or under his direction, and by his authority in the premises, in consequence whereof grave and serious physical trouble and disturbance and mental anxiety and distress resulted," etc.

The defendant filed the general issue plea and afterwards a second plea which was demurred to, and the demurrer was sustained. The trial resulted in a verdict in favor of the plaintiffs for one thousand dollars, and this appeal was taken from the judgment entered thereon. There are twenty-one bills of exception in the record,—the first twenty presenting rulings on the admissibility of evidence, and the last one the rulings on the prayers. The plaintiffs offered two prayers which were granted, and the defendant offered seventeen, all of which were rejected excepting the fourth. The defendant also filed special exceptions to the plaintiffs' first prayer.

The operation by Dr. Hunner on Mrs. Stevenson was described by him as "the removal of the lower third of the right kidney and drainage of an abscess around the kidney laying between the kidney and the bowel." The operation was performed on June 20th, 1910,—she having gone to the hospital on the 15th of June. She was a patient of Dr. Madara who lived near her home in Caroline County. Dr. Madara discovered that she had some kidney trouble and sent her to Dr. Julius Friedenwald of Baltimore. The latter's diagnosis was stone in the kidney and he arranged to have Dr. Hunner operate on Mrs. Stevenson because he "believed him to be the very best man in Baltimore for this kind of work." Dr. Friedenwald also arranged for the patient to go to the Union Protestant Infirmary, and she entered the women's ward of that hospital, paying $10.00 a week. She did not see Dr. Hunner until the day after she entered the hospital, when he examined her kidneys and made certain tests in addition to the X-Ray which had been previously taken. She entered the hospital on Wednesday and was operated on on the following Monday. There is nothing in the record to suggest that the operation was not skillfully performed, but on the contrary counsel for the plaintiff stated at the trial, "we have no fault to find with the skillfulness of the operation" and some of the most prominent surgeons in Baltimore—it would not be too much to say, in this country—show by their testimony that it was regarded as one of the most remarkable operations that had ever been successfully performed. If the plaintiffs relied alone on alleged negligence or want of proper care and skill in the performance of the operation, we could have no hesitation in holding that there was not legally sufficient evidence to justify the lower Court in submitting the case to the jury.

But the testimony shows that about five weeks after the operation was performed, Mrs. Stevenson returned to her home and on September 9th a piece of gauze which had been left in her was removed by Dr. Madara. A week after that some rubberized silk was taken out by Mr. Stevenson, the

husbands. The evidence shows that at the time of the operation what is spoken of as a "cigarette drain" was inserted within the kidney pelvis, and that it led therefrom to the surface of the wound. There were also two strips of gauze packed in the abscess cavity which protruded out of the wound. The "cigarette drain" was made of gauze rolled into shape of a cigarette, which was covered with rubberized silk,—so as to prevent the substance drained from getting into the cavity in which the drain was placed. The end of that drain and of the two gauze strips protruded several inches out of the wound, and a stitch was taken in each corner of the incision—the intervening space in the incision being left open. The outer dressings and bandages were applied to the wound of the patient who was then taken from the operating room to her bed in the ward.

Mrs. Stevenson testified that she left the hospital about the 20th of July. She said that the defendant examined the wound the day before she left the hospital and told her she was ready to leave and that her husband could dress the wound but that she should call in her family physician occasionally to see that it was all right. She asked Dr. Hunner if he thought the wound would continue to drain and he replied: "I don't know. Probably it will for about a month." Dr. Madara testified that after she returned home he found that the wound was still draining but was informed that Mr. Stevenson would be allowed to dress it. He said he saw her "a couple of times a week," and when he would go there he would dress the wound himself. On September 9th they telephoned to him that something was coming out of the wound. The next day he saw her and found a piece of gauze protruding from the wound. He said: "It was out probably an inch or two, so I took hold of it with a pair of forceps and made traction on it and I kept drawing it out, and I had to make pretty strong traction in some places to get it out. When I had taken about a foot and a half or two feet of it out, it kind of broke off. I felt sure there was some of it in there—that is, that I did not get all of it out. I dressed the

wound, and that night I think I wrote to Dr. Hunner and explained this to him, and I think I stated to him I was afraid there was still some gauze in there." He did write on September 11th as follows: "Very much to my disappointment I removed about a foot of drain from Mrs. Stevenson and fear there is still some remaining. She will be over to see you some time during this week and I would like you to examine thoroughly for more drainage." Dr. Hunner replied on September 13th as follows: "I am sorry that we should have been so careless as to have lost a drain in Mrs. Stevenson, but that explains what I could not explain before, why the wound should keep open. I think you will find it close promptly now and no permanent harm will result. I would wait two or three weeks before sending her over, just to see if the wound does not do better. I hardly think there can be another gauze. Will you please tell Mr. S. I got his letter and wrote this to you?" On the same day he wrote to Mr. Stevenson as follows: "I wrote to Dr. Madara this A. M. I am sorry to hear of that drain, but I am glad to know of its removal, for that is what has kept the wound from healing. I wrote to Dr. M. to keep Mrs. S. at home a few weeks, as you will now probably find prompt healing. It has mystified me to know why the wound kept open, and I am glad to have the explanation. I do not think it has harmed Mrs. Stevenson in any way, but it is certainly unpleasant to think of her having so much inconvenience." That was in reply to a letter from Mr. Stevenson which he began by saying, "Dr. Madara was out to see Bertha Saturday evening and took a drain left in by some one's gross carelessness at the U. P. I."

Dr. Madara testified that about a week after he had taken out the gauze (Mrs. Stevenson wrote to Dr. Hunner that it was on October 8th) Mr. Stevenson came into his office very much excited and said he had something which he wanted him to look at. He found that it was a piece of the rubberized silk. Mr. and Mrs. Stevenson testified that Mr. Stevenson removed it from the wound about a week after the gauze

was taken out by Dr. Madara, but on October 17th Mrs. Stevenson wrote to Dr. Hunner as follows: "Last Saturday evening a week ago, the 8th, Mr. Stevenson took a substance about three inches or more in length from the incision in my side. Dr. Madara says it was a silk rubber sack that was around the drain. You of course will know what it was. Do you think there are any hatchets, saws or the like in me yet? Now, Dr. Hunner, please write to me and give me your opinion. Do you think it will heal now? Is there anything else that must work out before it can heal? Could that drain have injured my kidney, for I am sore in those parts and have pain at times. Please let me hear from you." Dr. Hunner replied to her on October 18th as follows: "I do not wonder that you are surprised and disgusted with the foreign bodies that you have been fishing from your side. It is most humiliating to me to feel that such things could have been overlooked in your after treatment. Unless you have, as you say, some saws or hatchets or forceps or some other foreign body, still tucked away in your side, I should say that your wound would now heal fairly rapidly. You need not worry about this having affected your kidney in any way, as the drain was entirely outside of the kidney. Instead of answering your last letter to you I wrote to Dr. Madara rather fully and advised him to have you come up in the near future and allow me to go over your condition carefully. I hope you will be able to do this."

After the gauze and rubberized silk were removed the wound continued to drain and become very offensive. Mrs. Stevenson noticed on the dressing removed from the wound some tomato seeds and celery seeds. She had eaten tomatoes and pickle which had celery seed in it, and it was subsequently ascertained that a *fecal fistula* had developed. She returned to Baltimore on November 2nd, 1910. Dr. Hunner examined the wound and on November 4th curetted it. That was done on November 4th at the Church Home, as the operating room at the Union Protestant Infirmary was in use. Dr. Hunner gave her gas during that operation, and

that afternoon she went to the home of her sister-in-law in Baltimore, where she went to bed. The following week pleurisy developed and the morning after Dr. Holland, who was sent for, pronounced it pleurisy, Dr. Hunner was called in and said she would have to go back to the hospital. She went to the Union Protestant Infirmary and remained there until some time before Christmas when she returned home. During that time Dr. Hunner did not give her any surgical treatment, but she was treated for the pleurisy and the wound was dressed from time to time.

She returned to the infirmary in January, 1911, and the wound was somewhat enlarged and curetted by Dr. Hunner. She remained at the hospital until February when she went home and the wound finally healed that summer. Dr. Hunner had a microscopic examination made in November, 1910, and tubercle bacilli were found. Mrs. Stevenson now has pulmonary tuberculosis, and the plaintiffs claim that it is the result of leaving the drains in her, while the defendant undertook to show that the portion of the kidney which was removed shows that the kidney was tuberculous at the time of the operation, although it was not discovered until after the examination in November, 1910. At the time of the operation in June, Dr. Hunner did not examine to see whether the kidney was then tuberculous as he was of the opinion that the disturbance in the kidneys was the result of stone, as the test tended to show. The plaintiffs also contended that the fecal fistula with which Mrs. Stevenson suffered was the result of the gauze and rubberized silk being left in the cavity.

The theory of the defendant on the main question is thus stated in the brief in his behalf: "That an operating surgeon at a hospital of repute, in the case of a wound left open, is not liable for the negligence of hospital surgeons, nurses or internes, in the after dressings of such wounds, if such operating surgeon is without knowledge of, or not privy to such negligence." At this day when it is well known that there are physicians and surgeons of special skill in particular

branches of their profession, it could not safely be announced as a general rule of law, applicable to such cases as this, that a surgeon who performs an operation is liable for the negligence of other physicians, nurses or internes in hospitals in the after treatment, unless he specially undertakes such employment. A surgeon may be called many miles from his residence to perform an operation, and if he is to be held responsible for the negligence of others after the operation, it might mean either that one of special skill would refuse to perform such operations at distant points, or that his charges would be such that no one of moderate means could employ him. It might be detrimental to the public if such a surgeon was required to attend to the after-treatment, as it would be impossible for him to do so and perform as many operations as some of them do. It would be unreasonable to expect such a one as the record shows the appellant to be—performing operations in five different hospitals in Baltimore, and in one at Frederick, in addition to his other practice—to continue to dress the wounds and have personal charge of the after-treatment in all cases until the patient is discharged from the hospital.

Although there have been many decisions in the Courts of this country and England as to the liability of physicians and surgeons for negligence and want of proper care, we have not been referred to any in which it has been held that a surgeon is responsible under such circumstances as the defendant's evidence shows existed in this case. *Akridge* v. *Noble,* 114 Ga. 949, S. C. 41, S. E. 78, is one of the principal cases relied on by the appellees. But in that case the sponges or pads which it was claimed caused the injuries complained of were placed in the wound during the operation, and the surgeon in charge denied that they were sewed into the abdominal cavity and a verdict in his favor was sustained by the Court. There was no such question presented as is raised here,—whether the surgeon is responsible for the negligence of the hospital surgeons, nurses or internes, in their treatment of the patient after the operation was over.

So in *Gillette* v. *Tucker,* 67 Ohio St. 106, S. C. 93 Am. St. Rep. 639, it was claimed that the surgeon placed the sponge within the wound and sewed the wound up with the sponge inside. The Court was evenly divided on the question that was before it. In *Reynolds* v. *Smith,* 148 Iowa, 264, S. C. 127 N. W. 193, the piece of gauze was placed in the wound during the performance of the operation, and although the surgeon lost the case, the Court said: "The evidence disclosed that nurses and the interne sometimes dressed the wound. They were not employees or agents of the defendants, and unless defendants were negligent in permitting this to be done by them, they were not responsible for their acts save in so far as their duty exacted examination of the wound and proper treatment. Had there been evidence tending to show that from the acts or omissions of said nurses and interne a gauze became lost and was allowed to remain in plaintiff's abdomen, the jury must have been instructed as above." In *Palmer* v. *Hamiston,* 87 Ohio, 401; S. C. 101 N. E. 283, the alleged negligence was in leaving sponges used in the course of the operation in the patient's body. Other cases of a similar kind might be referred to, but we do not deem it necessary. Indeed, the attorneys for the appellant say in their brief: "We entirely agree that, if in the case at bar, Dr. Hunner had lost a sponge in the female plaintiff's body at the time of operation, whether placed by him or by another in his presence, he should be held responsible;" and we are of the opinion that such admission can well be made, for we would not be willing to announce a contrary rule.

There are, however, cases which sustain the position contended for by the appellant, which we have indicated by what we have said above is the correct rule in regard to the liability of a surgeon for treatment by other surgeons, nurses, and internes employed in hospitals after the operation is over. The case of *Harris* v. *Fall,* decided by U. S. Circuit Court of Appeals, and reported in 177 Fed. 79, 27 L. R. A. (N. S.) 1174, and 100 C. C. A. 497, is directly in point and fully sustains the contentions of the appellant. In comment-

ing on the instruction of the lower Court Judge Seaman said: "Support for the instruction, therefore, rests on this proposition: That the engagement of Dr. Harris, under the circumstances in evidence, conclusively implies his obligation not only to perform and complete the operation—which, as defined in *Akridge* v. *Noble, supra,* 'begins when the opening is made into the body and ends when this opening has been closed in a proper way after all appliances necessary to the successful operation have been removed from the body'— but to attend either personally to all care, dressings and treatment required, or employ professional assistance therefor until recovery or discharge from such care. We believe no such undertaking on the part of Dr. Harris can reasonably be presumed under the evidence, and that it is without sanction under any authority called to attention. * *.* We believe, moreover, that proof of local customs in respect of such hospital service was not needed; that the general custom of incorporated general hospitals in like localities, to furnish like service, and of reliance thereon by an independent operating surgeon and by patients therein for the usual care and after-treatment incidental to an operation, are matters within common knowledge and entitled to notice accordingly. In *Baker* v. *Wentworth,* 155 Mass. 338, 29 N. E. 589, this custom in respect of nurses is recognized, and the operating surgeon held exempt from liability for negligence of the nurses, although the patient supposed (in the absence of representations) that the hospital was owned by the surgeon, and in *Perionowsky* v. *Freeman,* 4 Foster and F. 977, 980, Cockburn, Ch. J. remarked upon the practice (there proven) of surgeons to leave care of the patients in various details to the hospital nurses, that such practice was 'indispensable,' and the operating surgeon was not liable for their negligence. So, these hospital attendants known as 'internes' (usually young physicians) are furnished at the general hospitals to attend to the ordinary work of dressing and treating the wound (left by an operation) on the way to recovery; and the mere undertaking of the surgeon to operate under call or

engagement therefor, cannot, as we believe, imply his further personal undertaking for the ordinary details of after-treatment, to make the doctrine of *respondeat superior* applicable, to charge him for fault or negligence on the part of such hospital attendants, neither known nor discoverable by the surgeon in the exercise of care and skill throughout his engagement."

We have thus quoted at length from that case, not only on account of the high standing of that Court, but because what we have quoted seems to us to be founded on just and reasonable principles. See also what was said by COCKBURN, Ch. J., in *Perionowsky* v. *Freeman,* 4 Foster and Finlason, 977 (Court of Queen's Bench, 1866), referred to in *Harris* v. *Fall; Armstrong* v. *Bruce,* 4 Ontario Weekly Rep. 327; *Hitchcock* v. *Burgett,* 38 Mich. 501; *Myers* v. *Holborn,* 58 N. J. Law, 193; *Morey* v. *Thybo,* 199 Fed. 760; 30 *Cyc.* 1581; 5 *Thomp. on Neg.,* section 6723. We would add that there is nothing in *State, use Janney,* v. *Housekeeper,* 70 Md. 162; *Dashiell* v. *Griffith,* 84 Md. 363; or *Miller* v. *Lieb,* 109 Md. 414, contrary to the conclusion reached by us. What was said in those cases was applicable to the facts in them, which are wholly different from those now before us.

Having reached the conclusion that the appellant cannot be held responsible for the negligence, if any, of the hospital physicians, nurses or internes in the dressings of the wound after the operation was performed, if he did not know of or was not privy to such negligence, and it was not discoverable by him in the exercise of ordinary care, we will now as briefly as we can consider the various rulings of the lower Court.

It is only just to that Court to say that although our opinion will indicate that we find many errors in its rulings most of them are attributable to its fundamental error as to the responsibility of a surgeon operating under such conditions as the appellant did.

The demurrer to the second plea should have been overruled. It may be that most, if not all, of the matters set up

in this plea could have been offered under the general issue plea, but that is not the test. The statement and explanation of the rule in 1 *Poe,* sections 637-641, will relieve us of the necessity of discussing that subject further. Nor can it be correctly said that the plea was bad for duplicity. It was not intended to set up several grounds of defense, but it states various facts applicable to the one defense. 1 *Poe,* Sections 733-734. Such a plea as this would have a tendency to present the real issue in the case much better than simply relying on the general issue plea, and is certainly fairer to the plaintiffs.

The first bill of exceptions presents a ruling when Dr. Tanner, produced as an expert by the plaintiffs, was on the stand. He had said in chief, that "The operating surgeon should either personally dress, or from time to time personally supervise the dressing of a wound from the time of the operation until the discharge of the patient." He was asked on cross-examination: "It is the invariable custom among reasonably diligent and competent surgeons to personally apply all the dressings following the operation, and throughout the after-treatment following the operation where the patients are being treated in hospitals?" An objection to that question was sustained. There was error in that ruling. For reasons stated later we find no error in the ruling in the second bill of exceptions. Dr. Hunner was asked: "Is the dressing of post operated wounds, as you have described in Mrs. Stevenson's case, difficult?" An objection to that was sustained and the ruling is in the third bill of exceptions. There was error in that ruling. As reflecting upon his right to leave that to the nurses and other attendants in the hospital, the question was relevant. There was no error in the fourth, fifth or sixth exceptions. The seventh was immaterial, as the operation was conceded to have been skillfully performed. There was error in the ruling in the eighth exception. It was proper to ask Dr. Friedenwald what the practice was among reasonably diligent, competent and skillful surgeons practicing in hospitals in reference to the per-

sonal care, after-care and treatment of patients' wounds on whom they have operated. In the ninth exception Dr. Blake was asked: "Does it or not require a high order of skill to make these dressings following the operation, and where they are such as have been described in the testimony in this case?" He should have been permitted to answer that for the reason stated as to the third bill of exceptions. There was error in the rulings in the tenth and eleventh. As the plaintiffs claim that the tuberculosis was the result of the gauze and rubberized silk being left in the wound, it was proper to ask Dr. Blake to state how in his judgment the sinus left from this wound became infected with tuberculosis, and what connection, if any, the tuberculous condition of the sinus had with the operation or subsequent treatment of the case by defendant. Nor do we see any reason why the answer of Dr. Blake in the twelfth exception should have been stricken out. It was proper to let the jury know how long it usually takes such a wound as described in the testimony to heal. There was error in the thirteenth, and the Court was apparently mistaken as to what the witness said. The question asked in the fourteenth was proper and should have been allowed. That in the fifteenth was too broad. We think that the rulings in the sixteenth and seventeenth exceptions were erroneous. They had reference to the custom in the care and after-treatment of patients operated on at general hospitals. In our judgment it is proper to prove such custom. *Harris* v. *Fall, supra; Palmer* v. *Humiston, supra.* See also *Bank* v. *Magruder,* 6 H. & J. 172; *Bank* v. *Fitzhugh,* 1 H. & G. 248; *Burroughs* v. *Langely,* 10 Md. 248; *Given* v. *Charron,* 15 Md. 502, and *Con. Gas Co.* v. *Smith,* 109 Md. 186. We do not understand the object of the question in the eighteenth exception, as found in the record. There is apparently some mistake either in the question as asked or as printed. The motion to strike out the latter part of the answer in the nineteenth exception should have been overruled. The charter of the Union Protestant Infirmary which was offered as shown by the twentieth exception is not

in the record and hence we cannot say whether it was relevant.

This brings us to the rulings on the prayers. The plaintiffs' first prayer was proper under the theory of the law adopted by the lower Court, but with it as we determine it to be, it would be misleading, as the prayer does not limit the liability of the defendant in reference to the after-treatment. Before passing on the defendant's prayers it is proper to consider the second exception which contains the rulings on six motions to strike out all or some parts of the testimony of Dr. Tanner. Those motions were not made until the plaintiffs had rested their case and we do not find in the record that any of his testimony was admitted subject to exceptions or that any objection was made to his competency to testify. In *United Rys. Co.* v. *Corbin,* 109 Md. 442, a motion for re-argument was made because no objection was made below upon the ground that Dr. Baum was not qualified as an expert to answer the question, and therefore his qualification was not open for review. We declined to adopt that view under the circumstances of that case, but the testimony of Dr. Baum was objected to, while in this case the record does not show that any objection was made to this testimony when offered, or until these motions were made. The Court was clearly right for that reason in overruling the motions, and we do not feel at liberty to pass on the competency of Dr. Tanner as an expert.

The defendant offered so many prayers that we cannot be expected to discuss them at length. The exception to the rulings of the first and second as offered at the conclusion of the plaintiffs' testimony were waived by the defendant's proceeding with his testimony, but as they were again offered at the conclusion of the whole case they are now before us. We have given them very careful consideration, and we are of the opinion that they were properly rejected—notwithstanding the fact that we differ with the lower Court as to the responsibility of the defendant for acts of negligence, after the operation, by those in the hospital. It is true that Dr.

Hunner testified that he removed the cigarette drain, or had it removed in his presence, on the third day after the operation and Miss Kauffman, senior nurse in the woman's ward of the infirmary, testified that on the 22nd day of June, 1910, Dr. Hunner dressed Mrs. Stevenson's wound and took a cigarette drain from the right side of the incision and a protective drain from the left, and that she helped him with the dressings. She said she made this entry on the temperature chart sheet on the 22nd day of June: "Cigarette drain removed from the right·side and protective drain removed from the left side." That entry was in her handwriting and was made on that day. The reference to the protective drain being removed from the left side we understand to be an incision made at the time of the operation in examining the left kidney, which is not involved in this case, further than as a part of the recital by Dr. Hunner and others present of what was done at the time of the operation. That promptly healed and Mrs. Stevenson had no trouble from it.

It is also true that a number of the most prominent physicians in Baltimore gave their approval in the strongest terms of Dr. Hunner's treatment, as shown by the testimony, but they, of course, had no personal knowledge of the removal of the drain. It is shown by the testimony that there were no drains protruding from the wound when Mrs. Stevenson left the hospital. Dr. Madara testified that there were none when he first saw her after she returned home. The gauze and rubberized silk which were afterwards taken from her must therefore have been inserted in her by someone before she left the hospital. It is not affirmatively shown that another cigarette drain was inserted by anyone after the third day, when Dr. Hunner dressed the wound and says he removed the cigarette drain placed in the cavity on the day of the operation. When these and other circumstances are considered in connection with the letters of Dr. Hunner, quoted above, we cannot hold as a matter of law that these prayers should have been granted, as it was for the jury and not for the Court to pass on the evidence, which was legally

sufficient to be submitted to them. The third prayer was properly rejected and we do not understand upon what theory the one marked four and one-half could have been granted. It is in direct conflict with the admission of the appellant above referred to. The theory of the fifth is correct, but should be broader, so as to submit to the jury whether it was known to Dr. Hunner or discoverable by him in the exercise of care and skill in the treatment he gave her. The sixth should have been granted. The theory of the seventh is correct. The eighth was properly rejected. It asserts that the undisputed evidence shows certain things, amongst others that the defendant was not negligent, careless or unskillful in the treatment following the operation. That was for the jury, as we have said above. There should be added to the ninth what we suggested above as to the fifth. The tenth seems to be a good prayer, although it might be made clearer by being shortened. The eleventh is in accord with what we have said. The twelfth should be further qualified by leaving to the jury to determine whether the defendant left the material in the wound. We do not understand just what is meant by the thirteenth. The fourteenth was properly rejected. The theory of the fifteenth is sufficiently covered by other prayers. The sixteenth and seventeenth were properly rejected. There was sufficient evidence to go to the jury on those questions, if it found for the plaintiffs.

It follows from what we have said that the judgment must be reversed and a new trial awarded.

*Judgment reversed and new trial awarded,*
*the appellees to pay the costs.*