[No. 23042. Department Two. September 2, 1931.]

J. D. TENNANT, *a minor, by Sybil Tennant, his guardian ad litem, Respondent,* v. JOHN F. BARTON *et al., Appellants.*[1]

*Atwell & Moore* and *Frank S. Senn,* for appellants.

*E. D. Germain* and *W. H. Sibbald,* for respondent.

FULLERTON, J.—The appellant John F. Barton is a physician and surgeon, specializing in diseases of the

[1] Reported in 2 P. (2d) 735.

eyes, ears, nose and throat. At the time of the transactions hereinafter recited, he had in his employ the appellant Bellas, who is also a specialist in like maladies. In October, 1929, the minor respondent, J. D. Tennant, was suffering from diseased tonsils, and applied to the appellant Barton for treatment. He was turned over to the appellant Bellas, who examined him, found his tonsils in a bad condition, and gave him local treatments for a time. It was then concluded by the doctors that, to effect a permanent cure, the tonsils would have to be removed, and they so advised the patient. He consented to an operation, and was taken to a hospital, where he was operated upon by Dr. Bellas. To facilitate the operation, a local anesthetic, novocaine, was given. This was administered by a hypodermic needle specially designed for that purpose. Roughly described, the instrument consisted of a syringe to which was fastened a hollow needle terminating in a sharp point. In administering the anesthetic, Dr. Bellas made a number of injections. When he had finished, and as he laid the instrument on a tray containing his operating tools, he noticed that the needle had broken at a place some five-eighths of an inch back from the point. A search for the broken part was made, which failed to discover it. Dr. Bellas then removed the tonsils, and a further search was then made for the point of the needle, with a like result.

As to the subsequent transactions, there is a serious conflict in the evidence. Assuming that version to be true which the jury were privileged to believe, it shows that the respondent suffered somewhat unusually from the operation; that, for a time, he could not open his mouth to take food other than in a liquid form; and that the appellant doctors appeared to be puzzled as to the cause of such unusual trouble. They finally caused an X-ray picture to be taken of the throat,

which disclosed the broken point of the needle to be embedded therein, about one-eighth of an inch beneath the surface of the membrane of the throat.

At this time, the respondent was informed that the point of the broken needle was in the throat, and the question of its removal arose between him and the appellants. The appellants advised against it, saying that it would be a serious operation, and that the embedded needle point would not, in all likelihood, give him any trouble. The respondent followed the advice of the doctors for the time being, but, as the throat continued to give him pain, he again went to them for further advice. At that time, a second X-ray picture was taken of the throat, apparently for the purpose of ascertaining whether the needle point had changed its position. The X-ray disclosed no perceptible movement of the needle, and the appellants again advised against its removal, but told him that, if he insisted, they would remove it. The respondent desired to have the needle removed, when the question arose as to whether he or the appellants should bear the expense. On this matter they could not agree, and the parties had no further dealing with each other.

The instrument used for injecting the novocaine was the property of the hospital. It was prepared for use by the surgical nurse of the hospital. The nurse, immediately prior to its use, sterilized the instrument, placed novocaine in the syringe, attached the needle to it, and tested it for the purpose of ascertaining whether the anesthetic would flow through the needle. She then placed it on the tray containing the other surgical instruments which the doctor found it necessary to use. The nurse testified that the instrument was in proper condition for use. The doctor himself did not examine it further than to look at it when he first picked it up from the tray.

It is in evidence that a needle point becomes dulled by use, requiring more pressure to insert the point into the membranes than is required when the needle is new. Whether this particular needle had been used prior to the time, or how many times it may have been used, if used at all, or whether it was sharp or dull, no one seemed to know. The superintendent of the hospital testified that it was one of three that had been purchased some three months before. It was manufactured by a reputable manufacturer, and was of a character and kind commonly used by surgeons generally for like operations.

There was testimony that needles of this sort sometimes break when used, no matter how carefully the surgeon may operate, or what pains may be taken to see that they are in proper condition. As we read the testimony, however, a breaking is not usual, or something that is to be expected.

There is no evidence that the breaking was due to any fault of the respondent. In the preparation for the operation, and during the time of its performance, he submitted himself wholly to the directions of the operating surgeon, and no act on his part, either voluntary or involuntary, is shown to have contributed to the accident.

This action was brought to recover for the injury suffered. The jury returned a verdict in favor of the respondent for $8,200. This verdict the trial court reduced to $5,200, on the theory that it was excessive, and for that sum a judgment was entered in favor of the respondent against all of the appellants.

The appellants, at appropriate times during the progress of the trial, interposed challenges which questioned the sufficiency of the evidence to sustain a verdict and judgment against them; and the orders of the

court overruling the challenges furnish the basis for the appellants' main contention.

It is not without difficulty that we have followed the arguments of the appellants' learned counsel on this branch of the case; but, if we understand them, they contend that the fact that a surgical instrument of this sort breaks while in use by an operating surgeon, when used by him in the usual manner and without apparent negligence or fault on his part, is not in itself evidence of negligence on which a verdict in damages for malpractice can be based. And they contend further that the record here is barren of any evidence or inference from evidence which even raises a presumption of improper care or attention on the part of the operating surgeon.

But the rule sought to be invoked is not as broad as the contention implies. It has support, perhaps, by some of the courts from other jurisdictions, but we ourselves have limited it. In *Alonzo v. Rogers,* 155 Wash. 206, 283 Pac. 709, we held, in effect, that, before the rule would obtain, it must appear that the instrument involved is such that, in the ordinary instance, no injurious consequences are to be expected from its use, that at the time of its use it is in proper and fit condition for use, and that the operator was in no way at fault in the manner of its use.

As we read the record in the present case, the jury could well have found that the required conditions to make operative the rule contended for, did not appear. The instrument used was neither examined for patent defects nor tested for latent ones. The jury could have found that the surgical nurse who selected the needle properly sterilized it and properly attached it to the syringe, but there is no evidence which would have warranted the finding that she examined or tested it for defects. The evidence is undisputed that the op-

erating surgeon gave it no examination at all. He accepted it as a fit instrument merely from the fact that it was furnished to him for use by the hospital attendants.

We cannot follow the argument made in this connection that the surgeon is not responsible for the negligence of the hospital attendants. It is possible that for the negligent performance of such attentions or services to the injured person as the surgeon is not expected or required to furnish, he would not be responsible, but manifestly he must be for instruments of this sort. They are the instruments which he must himself furnish, and as between himself and his patient, he is responsible for their condition; and this is so whether he furnishes them from his own case of surgical instruments or obtains them from another. It is our opinion, therefore, that the trial court correctly ruled that the evidence was sufficient to sustain a verdict for the respondent.

■ Of the assignments of error which, if well taken, would require a new trial, the first is based on the contention that the court permitted a physician and surgeon to testify who lacked a proper qualification. The operation under consideration was performed at a hospital in Longview, in the state of Washington. The doctor called as a witness resided and practiced at Portland, in the state of Oregon, and had never practiced his profession in Longview, or in the immediate neighborhood. The objection to his testimony was that he could not know what was common or good practice in the general neighborhood in which the appellants were practicing. But the witness answered to a direct question that he was familiar with the standard of practice of medicine and surgery in the general locality of Longview, though he admitted on cross-examination that he was not familiar

with the particular kinds of practice employed in the city of Longview or the neighboring city of Kelso.

It was not made to appear, however, that the standard of practice in those cities differs in any respect from that of the general locality, say southwestern Washington and northwestern Oregon; and the court cannot assume that it does differ. Moreover, the material part of the witness's testimony related only to the hypodermic needle, the manner of its use and the probable cause of the breaking of a needle in the process of making an injection. He concurred with the appellants Barton and Bellas and their expert witnesses in saying that the needle used in the operation in this case was of a standard type in general use in such operations, and testified that he himself used that kind of a needle in like operations. In short, the purport of his testimony was substantially the same as that of the other experts, except that he expressed the opinion that the breaking of a needle while an injection is being made is caused either by a movement of the patient or by a mishandling of the instrument by the operator.

There is no doubt in our minds that the witness was shown to be sufficiently qualified to give the testimony he did. The authorities on which the appellants rely represent instances in which the inquiry related to the degree of care that the operating surgeon must exercise in the treatment of his patient, not the qualifications a doctor must have in order to testify as an expert.

The court gave to the jury the following instruction, namely:

"You are instructed that if you should find from the preponderance of the evidence that the defendant Bellas at the time of inserting this needle into plaintiff's throat was guilty of negligence in so doing, as

the term negligence has herein been defined to you, and thereby broke the needle off in plaintiff's throat, then plaintiff would be entitled to recover for the injuries and damages proximately resulting therefrom. If you do not find that defendant Bellas was guilty of negligence in the use of the needle at the time it was inserted in plaintiff's throat, but should find from a preponderance of the evidence that said needle was thereafter negligently allowed or permitted to remain in the plaintiff's throat, then plaintiff would be entitled to recover for all injuries proximately resulting therefrom.''

The appellants assign error on the concluding clause of the instruction, contending that the record is barren of evidence tending to show that they were negligent in permitting the needle point to remain in the respondent's throat. The medical testimony on the question was conflicting, but we cannot say that there was no substantial testimony supporting the respondent's claim that they were negligent in that respect.

The judgment is affirmed.

TOLMAN, C. J., PARKER, and BEELER, JJ., concur.

BEALS, J., dissents.