[Civ. No. 1414. Fourth Appellate District.—January 23, 1934.]

OLIVER M. CHARLEVILLE, Appellant, v. METROPOLITAN TRUST COMPANY OF CALIFORNIA (a Corporation) et al., Respondents.

350

Duckworth & Harrison and Lloyd W. Robinson, Jr., for Appellant.

Swing & Swing, Hiram T. Kellogg, Leslie E. Still, Allard & Stead, H. A. Savage, Walter A. Hewicker, Craig & Weller, M. L. Granger, Charles Bagg and E. C. Gridley for Respondents.

MARKS, J.—Appellant was very seriously injured when a wall bed in which he was sleeping collapsed. He brought his action to recover damages and has appealed from a judgment entered for respondents following the granting of their motions for nonsuit. He does not question the correctness of this judgment in favor of certain defendants who are not named as respondents here.

Earle C. Dingwell was the owner of a number of apartment houses in Los Angeles and San Bernardino Counties, among them the Norman Manor Apartments in the city of San Bernardino. He was in financial difficulties in the summer of 1930 and entered into an agreement with many of his creditors whereby he sought to secure their claims and provide for payment. He transferred the properties to the Metropolitan Trust Company of California in trust under the terms of a duly executed declaration of trust wherein he was designated as trustor and the Metropolitan Trust Company of California, the trustee. Herbert M. Goddard and Louis Pokress, who had advanced $104,295.36 to be used in paying taxes and assessments and placing in good standing certain trust deeds upon the properties and to be applied on the claims of laborers and materialmen, were designated class A beneficiaries. The large list of unsecured creditors, including all of the respondents not named in this paragraph, were designated class B beneficiaries, and Janet W. Goddard and Sophia Dingwell, residuary beneficiaries. In the declaration of trust the trustor, class A, class B, and the residuary beneficiaries appointed Earle C. Dingwell and Thomas Waddell ''a committee to operate, manage and conduct the Trust Estate as and for apartment house uses and purposes, which committee shall manage and have complete charge of said Trust property, and each and every part thereof, employing such house managers, janitors, and other

help as shall, in the opinion of the committee, be needed for the proper maintenance and operation of the Trust property; and the power of the Trustee to operate, manage, and conduct said Trust Estate as and for apartment house uses and purposes shall be abridged and suspended until and unless class B beneficiaries, representing at least thirty-three and one-third per cent (33⅓%) of the then unpaid balances of the Trustee's Certificates then outstanding, shall terminate the rights, powers, duties and employment hereunder of Earl— C. Dingwell and said Thomas Waddell for good and sufficient cause''. During the times material to this action Margaret Wilkinson was manager of the Norman Manor Apartments.

On October 13, 1930, appellant rented a furnished apartment, number 114, in the Norman Manor Apartments for occupancy by himself and wife. The apartment was equipped with a Holmes wall bed, manufactured by the Holmes Bed Manufacturing Company, and sold and installed by Barker Brothers, Incorporated. Appellant and his wife occupied the apartment until January 28, 1931. The rents for the months of November and December, 1930, and January, 1931, were paid to the trust and became a part of its assets.

The wall bed fitted into a recess about eighteen inches deep when not in use and was lowered into the room when it was to be occupied. It had three powerful coil springs on each side to hold it in position and to assist in raising it. Its head was fastened to the floor by eight one and one-quarter-inch screws which passed through holes in angle irons which were part of the bed, through the carpet and filler under it and into the floor boards.

On the night of January 28, 1931, after appellant and his wife had retired, the screws holding the bed to the floor gave way. The springs pulled the head of the bed onto appellant, doubling his head onto his body, fracturing his sixth and seventh cervical vertebrae and injuring his spinal cord in the neighborhood of his sixth, seventh and eighth cervical segments. The amount of appellant's damage is not now in issue so it is not necessary to further describe his injuries.

There were a number of other similar wall beds in the Norman Manor Apartments. While the bed in apartment number 114 had not given trouble before January 28, 1931, a number of the other wall beds had loosened the screws with which they were held to the floor. A repairman employed by Dingwell to refasten the loosened beds told him and Margaret Wilkinson several times before the accident here in question that the Holmes wall beds were not properly installed and that unless they were more securely fastened to the floor someone would be injured or killed.

The general question of the liability of the class A, class B, and residuary beneficiaries under the terms of the trust is not argued in any of the briefs filed in their behalf. Nor is the question of the liability under the trust of the Metropolitan Trust Company of California in its individual, as distinguished from its trust capacity, considered in its brief. We have not considered these questions and nothing said here should be construed as bearing upon them.

Appellant urges the following grounds for a reversal of the judgment:

"An affirmative defense must be pleaded and proven and defendants who have failed to plead such affirmative defense cannot rely on the same.

"Defendants cannot develop an affirmative defense by improper cross-examination and then predicate a judgment of nonsuit on such improperly admitted testimony.

"The question of whether sums of money received by plaintiffs from former defendants were received by plaintiff as compensation for his injuries or as consideration for certain covenants not to sue presented a question of fact to be determined by the jury, and it was not proper for the Court to determine this issue on a motion for nonsuit.

"The execution of a covenant not to sue one joint tortfeasor is not a bar to a further prosecution of this action."

The first and second of these contentions will be considered together.

Appellant filed a complaint, a first amended complaint, and a second amended complaint. Several defendants named in the first two pleadings were not named in the third. While he was on the witness-stand it was developed on cross-examination, over the strenuous objection of his counsel, that he had received approximately $6,700 from

certain defendants. Some of the defendants alleged that appellant had been paid money in settlement of his claim for damages by other defendants. Other defendants did not plead this defense.

For the purpose of this opinion we may assume that the trial court erred in overruling the objection to the questions eliciting information concerning these payments, and that retraxit is an affirmative defense which must be plead and proved by a defendant before he can avail himself of it. These errors do not require a reversal of the judgment. If we should reverse the judgment solely because of them the case would return to the court below for a new trial. A request to amend the answers to plead the payments, if made in proper time, would have to be granted. The fact of the payments could then be proved by the defendants as part of their cases. If it should develop that the payments did in fact release one or more of the joint tort-feasors the final judgment would have to go against appellant, for an injured party cannot accept payment of his claim for damage from one joint tort-feasor and press his action against another. Unless we conclude that the evidence supports the theory that the payments were made for covenants not to sue and not as payments of damages we should not reverse the judgment solely because of the technical errors presented by the two assignments we are considering. A reversal under such circumstances is prohibited by section $4\frac{1}{2}$ of article VI of the Constitution.

In approaching appellant's third assignment of error it must be admitted that if any liability attaches to respondents, at least those other than the Metropolitan Trust Company of California, it is upon the theory of their being joint tort-feasors engaged in renting furnished apartments for their mutual benefit. In renting furnished apartments there is an implied warranty that the furniture is fit for use. The owner is liable for damages caused by patent defects. (*Fisher* v. *Pennington,* 116 Cal. App. 248 [2 Pac. (2d) 518].)

It is well settled in California that an injured person is permitted but one recovery for his injuries. He may join several joint tort-feasors in one suit or may file separate suits against them, but payment of his damage by one, releases the others. (*Urton* v. *Price,* 57 Cal. 270; *Tomp-*

*kins* v. *Clay Street Ry. Co.,* 66 Cal. 163 [4 Pac. (2d) 1165] ; *Chetwood* v. *California Nat. Bank,* 113 Cal. 414 [45 Pac. 704] ; *Bee* v. *Cooper,* 217 Cal. 96 [17 Pac. (2d) 740] ; *Flynn* v. *Manson,* 19 Cal. App. 400 [126 Pac. 181] ; *Bogardus* v. *O'Dea,* 105 Cal. App. 189 [287 Pac. 149].) This rule is subject to the well-recognized exception that the injured person may avoid the results of his release by proving rescission or that it was obtained by undue influence, fraud, oppression, duress, mistake or through his mental weakness, incapacity or other similar causes. (*Baird* v. *Pacific Electric Ry. Co.,* 39 Cal. App. 512 [179 Pac. 449] ; *Wilson* v. *San Francisco-Oakland Terminal Railways,* 48 Cal. App. 343 [191 Pac. 975, 977] ; *Edmunds* v. *Southern Pac. Co.,* 18 Cal. App. 532 [123 Pac. 811] ; *Hawber* v. *Raley,* 92 Cal. App. 701 [268 Pac. 943, 944] ; *Winstanley* v. *Ackerman,* 110 Cal. App. 641 [294 Pac. 449] ; *Montes* v. *Peck,* 112 Cal. App. 333 [296 Pac. 624] ; *Tyner* v. *Axt,* 113 Cal. App. 408 [298 Pac. 537] ; *Raynale* v. *Yellow Cab Co.,* 115 Cal. App. 90 [300 Pac. 991] ; *Meyer* v. *Haas,* 126 Cal. 560 [58 Pac. 1042] ; *O'Meara* v. *Haiden,* 204 Cal. 354 [268 Pac. 334, 60 A. L. R. 1381] ; *Weddle* v. *Heath,* 211 Cal. 445 [295 Pac. 832].) In *Mairo* v. *Yellow Cab Co.,* 208 Cal. 350 [281 Pac. 66, 67], it was said: "If the said three releases were obtained by taking advantage of plaintiff's ignorance and necessities and if their true character was misrepresented to him so that he did not know what he was really signing, they are, of course, void. But under the conflicting evidence here it is impossible to tell whether such was the fact. This also was an issue which should have gone to the jury and it was, therefore, erroneous for the trial court to direct said verdict for defendant."

The case of *Baird* v. *Pacific Electric Ry. Co., supra,* in which a petition for hearing in the Supreme Court was denied, presents a legal question similar to the one before us. It was there said:

"Prior to the date of the trial the plaintiff demanded a jury, which demand was by the court denied, on the ground that the issues made and presented by the pleadings were not cognizable before a jury, and presented equitable issues alone. Upon the calling of the case for trial, a witness for the plaintiff was sworn and called to the stand; but thereupon defendant's counsel objected to the introduc-

tion of any evidence for plaintiff, on the ground that it appeared from the pleadings that said plaintiff had no cause of action against defendant, and upon the failure of plaintiff to make a tender of the sums of money admitted in open court to have been received from defendant at the time of the execution and delivery of the three releases pleaded in the answer, after an adjournment from 11:30 a. m. until 2 o'clock p. m., granted to enable plaintiff to make such tender, and the court having refused further time to procure the money for such tender, the court sustained defendant's objection to the introduction of evidence, and gave judgment for the defendant. The plaintiff alleges error of the trial court in refusing him a jury trial, and in denying the admission of any evidence for plaintiff.

"We will consider first plaintiff's right to introduce evidence, as it will be immaterial whether he had a jury or not, if he could not offer his evidence. It is clear that under the state of the pleadings at the time the trial was called, the burden was upon plaintiff to rebut the presumption of full payment and satisfaction of his demands, raised by the releases set forth in defendant's answer, the due execution and genuineness of which were admitted by failure to file the affidavit provided by section 448 of the Code of Civil Procedure. It is equally clear that he was not estopped from attacking these releases by any valid defense, other than such as involved the genuineness or due execution thereof. He could controvert them by evidence of fraud, mistake, undue influence, . . . mental incompetency and like defenses. (*Moore* v. *Copp,* 119 Cal. 432 [51 Pac. 630].) As has been stated, there is nothing in the pleadings to indicate what, if any, defense the plaintiff might have interposed to the admitted execution of these releases set forth in the answer. Under our system of pleading no such showing is required. The provision of section 462 of the Code of Civil Procedure that 'the statement of any new matter in the answer, in avoidance or constituting a defense or counterclaim, must, on the trial, be deemed controverted by the opposite party', entitles the plaintiff to introduce, without further pleading, evidence to sustain any legitimate defense to the new matter in the answer. (*Brooks* v. *Johnson,* 122 Cal. 569 [55 Pac. 423].) In this particular case the court seems to have assumed that the plaintiff was relying upon some de-

fense which he could not be permitted to maintain without first tendering back to the defendant the money he had received in consideration of the settlement agreements. We find nothing in the record to justify such assumption. It may perhaps be inferred that mental incompetency on the part of the plaintiff would be the defense. The action here was brought for plaintiff through a guardian *ad litem;* the complaint alleges that by reason of injury to his skull, in his expulsion from the car, his brain and mind were permanently injured; the bill of exceptions, in stating the ground of defendant's objection to a jury trial, puts it on the ground that the action under the pleadings has become essentially an action to avoid said releases upon the ground of mental incompetency. But conceding that these facts committed the plaintiff to the defense of mental incompetency, there is nothing whatever to indicate whether he would rely upon a partial or total incompetency. If his evidence would have disclosed a total incompetency to enter into a settlement, and a continuing and permanent disability in that respect, these releases became mere 'scraps of paper' (Civ. Code, sec. 38); and it is well settled that no obligation to repay money advanced on the settlement as a condition of controverting the agreements would exist. Or, even if the disability was only partial and temporary, and it should be shown in evidence that the settlement was obtained by fraud and deceit as to the contents of the agreements and their legal effect; or, again, if a state of facts existed where, in his weakened mental state, the plaintiff was induced by fraudulent representations to sign these releases, in the belief that he was being paid so much on account, he could not be required to tender back the payments as a condition of offering evidence to defeat the agreed settlement. (*Meyer* v. *Haas,* 126 Cal. 562 [58 Pac. 1042] ; *St. Louis etc. Ry. Co.* v. *Brown,* 73 Ark. 42 [3 Ann. Cas. 573, 83 S. W. 332]; *Mullen* v. *Old Colony Ry. Co.,* 127 Mass. 86 [34 Am. Rep. 349].)

"Other similar conditions, consistent with the facts shown in this record, might be shown in evidence to exist, but it is unnecessary to multiply illustrations. It is sufficient if any single line of attack upon these releases was open to the plaintiff, which he might have pleaded where circumstances required it. He was entitled to the presumption that he had

evidence to offer in that behalf. It is quite probable that he might have been required by the court, as a condition of being allowed to introduce evidence, to state what he expected to prove, and to show that he was relying upon a state of facts that would excuse a tender back of the money received, but nothing of the kind was demanded of or volunteered by him, so far as the record shows. Under the circumstances it was error for the court to deny plaintiff the privilege of introducing evidence.''

The case of *Wilson* v. *San Francisco-Oakland Terminal Railways, supra,* is also authority for the conclusion that in the instant case the trial court should not have granted the nonsuit until appellant had an opportunity to introduce evidence avoiding his releases, if such they were, assuming that he had such evidence. In the Wilson case it was said: ''In fact, all evidence offered by plaintiff tending to show the activities of Norwood and the statements made by him to plaintiff was excluded.

''We are of the opinion that the rulings of the court in this respect constituted error. We are of the opinion also that had plaintiff been successful in establishing the truth of the facts asserted by her in her written offer, the question of the fraudulent procurement of said releases should have been submitted to the jury together with the main issues of the case. The trial court, in excluding this evidence, was evidently acting upon the theory that plaintiff was required to show a direct connection between the supposed agent, Norwood, and the recognized agent of the defendant corporation, Mills. By the adoption of such a rule, however, plaintiff was deprived of the right, accorded to her by law, of proving fraud and conspiracy by circumstantial evidence. (Citing cases.)

''In brief, the substance of plaintiff's proffered proof was that she had been led to believe by trickery that her attorneys had abandoned her case; that through falsehood and deception she had been frightened into the belief that if she did not settle her case that day she could not be allowed to settle it afterward; that if she did not settle that day, she would on the following day be subjected to the rigors of severe examination by opposing counsel and perhaps be required to submit to X-ray examination as to her physical condition; and that while she was in that condition of mind

she was persuaded to go before the claims agent of the company, where, without the aid of counsel or friend, she was induced to settle for an inadequate and trifling sum.

"If the release relied upon by the defendant corporation to defeat plaintiff's action was the product of such methods, plaintiff should have been allowed to prove it."

All the competent evidence before us on the question of whether appellant executed releases and received payments for his injuries, or signed covenants not to sue, and accepted money for these promises, may be thus summarized: (1) He sued numerous defendants as joint tort-feasors; (2) he received money from several of them; (3) he dismissed his action without prejudice against those paying; (4) he had neither filed a new suit nor otherwise attempted to collect further moneys from any of those paying; (5) he signed documents, copies of which are neither in the record nor was the substance of any of them proven.

Appellant made no proffer of proof of fraud, and did not upon other grounds attempt to offer evidence to avoid the so-called releases. He contended that the documents were not releases and that the money had not been paid to compensate him for his injuries. The giving of releases, if such they were, to part of the joint tort-feasors and the accepting of money from them was properly a matter of defense to be set up in the answer and proved by the defendants. Under usual procedure the plaintiff would not be required to rebut or attempt to avoid the effect of releases until the defendants had rested their cases. Under ordinary procedure his evidence of fraud, or such other matter of defense, would have been offered in rebuttal of the affirmative evidence of defendants of a retraxit.

As we have observed, all the evidence concerning the payments to appellant was brought out on his cross-examination. He strenuously maintained that he had received no payments for his injuries and had given no releases—only covenants not to sue. He did dismiss his action without prejudice against certain defendants. He testified that he did not expect to sue them. This was not inconsistent with either a release or a covenant not to sue. He said that he did not think he could sue them. This was merely his opinion and legal conclusion. ■ The releases or covenants not to sue, whichever they were, are not in the record. The written

instruments should be before the court in order that they may be properly construed. The dismissals, of themselves, would not bar subsequent actions, for an injured person can sue each or all of several tort-feasors. (*Heath* v. *Manson*, 147 Cal. 694 [82 Pac. 331].) Nor would a covenant not to sue bar another action for " 'in such case the covenant does not operate as a release of either the covenantee or the other tort-feasors, but the former must resort to his suit for breach of covenant and the latter cannot invoke the covenant as a bar to the action against them' ". (*Hawber* v. *Raley, supra.*)

■ The rule governing construction of the evidence on a motion for nonsuit is stated in *Berger* v. *Lane,* 190 Cal. 443 [213 Pac. 45], as follows: "Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiffs. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiffs. If contrary evidence has been given it must be disregarded. (*Estate of Arnold,* 147 Cal. 583 [82 Pac. 252].) The plaintiff must also be given the benefit of every piece of evidence which tends to sustain his averments, and such evidence must be weighed in the light most favorable to plaintiff's claim. (*Anderson* v. *Wickliffe,* 178 Cal. 120 [172 Pac. 381].) Evidence, whether erroneously admitted or not, if relevant to the issues joined, must be given the credit and benefit of its full probative strength, and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered. The evidence must be taken most strongly against the defendant, and if the plaintiff has introduced proof sufficient to make out a *prima facie* case under the allegations of his complaint the motion, if made upon the close of the case, should be denied." ■ Under the record before us it is our conclusion that the motion for nonsuit should have been denied upon the grounds we are considering. The trial court should have had the documents signed by appellant before it, or at least some clear evidence of their contents if they could not be produced, so that their legal effect might be established.

Respondents cite the case of *Bee* v. *Cooper, supra,* in which a judgment of nonsuit, granted because the plaintiff had accepted compensation from and released two of three joint tort-feasors, was sustained by the Supreme Court. There the document signed by the plaintiff was before the court. It unquestionably constituted a release upon payment of damages. The plaintiff did not suggest in her briefs to the Supreme Court that the release might be avoided for fraud or upon any other kindred ground. This question was not before the court and was not considered in the opinion. It should not be construed as conflicting with *Baird* v. *Pacific Electric Ry. Co., supra,* and the numerous cases we have cited following the rule there announced.

The Metropolitan Trust Company of California urges a ground for sustaining the judgment in its favor which is not joined in by the other respondents. It may be stated as follows: The bed in question was personal property (*Fisher* v. *Pennington, supra*); it was owned by Dingwell, who executed a chattel mortgage upon it and other personal property to a stranger to this action; there is no evidence that title ever passed to this respondent. The foregoing facts are all supported by the record. We cannot conclude that actual ownership of the bed is necessary to attach liability to this respondent. Lawful possession, with the right to rent it to a tenant, should be sufficient. The apartment with its furnishings, including the bed, was rented to appellant and he paid rent on both the real and personal property. This was done with the knowledge and at least the implied consent of Dingwell. The money paid by appellant as rent was deposited in the trust account of the trustee. If, under the terms of the trust when it is finally construed, a liability be held to attach to the class B beneficiaries, at least the income of the trust in the possession of the trustee which would otherwise have gone to those beneficiaries, should be subjected to any judgment which appellant might recover. Of course, it might well be urged that no personal judgment should be rendered against the trustee and that only the assets of the trust in its possession should be subjected to the judgment if one be recovered. This question is not presented on appeal and we are not deciding it.

Respondents Joseph A. Allard, Jr., B. W. Allen, and Los Angeles Wholesalers' Board of Trade each present a ground for affirmance of the judgment in their favor which is common to them and is not urged by the other respondents. They urge that it is admittedly true that the liability, if any, of the class B beneficiaries, within which class they fall, depends upon their being a party to the declaration of trust and that there is no evidence that any of them executed that instrument. The arguments of each vary and must be separately considered.

The only signature of J. A. Allard, Jr., attached to the declaration of trust appears as follows: "J. A. Allard by Paul D. Walker." No point is made that "Jr." does not follow the word "Allard." On October 23, 1930, this respondent wrote a letter to the trustee which contained the following: "I wish to advise that Mr. Walker was authorized to sign my name to this instrument in so far as my interests are affected as a creditor." He also received a certificate of beneficial interest under the trust. We believe this evidence sufficient to make out a *prima facie* case against this respondent, which is all that is necessary on a motion for nonsuit.

The Los Angeles Wholesalers' Board of Trade, which is a corporation, had its name attached to the declaration of trust as follows: "L. A. Wholesalers' Board of Trade By Geo. H. Beeman." The evidence shows that Beeman was a minor employee of the corporation with no authority to execute instruments for it; that no responsible officer or agent of the corporation had any knowledge of his signing the declaration of trust until after the service of the summons and complaint and did not know of the receipt of a certificate of beneficial interest if one was delivered to the corporation. Appellant urges that the pleadings of this respondent estop it from denying the due execution of the declaration of trust. A copy of that document is attached to its answer. That pleading contains the following: "That thereafter and on a date unknown to this defendant but which it alleges was subsequent to October 23rd, 1930, the name of Los Angeles Wholesalers' Board of Trade was written and affixed to said consent then in the possession of said Metropolitan Trust Company of California, a corporation, as Trustee, by one George H. Beeman. . . . This de-

fendant alleges that in affixing the signature of the Los Angeles Wholesalers' Board of Trade to said consent, said George H. Beeman was not an agent or representative of said Los Angeles Wholesalers' Board of Trade, and was employed by the said Los Angeles Wholesalers' Board of Trade only for the purpose of collecting accounts and notes receivable, for cash, and in so affixing said name to said consent, said George H. Beeman was entirely without any authority from said Los Angeles Wholesalers' Board of Trade, and was acting wholly beyond the scope of his employment by said Los Angeles Wholesalers' Board of Trade.'' With these allegations before us we have concluded that there is no sufficient admission of the due execution of the declaration of trust to bind this respondent. The evidence fails to show any authority on the part of Beeman to execute the instrument. The judgment in favor of this respondent must be affirmed.

██ B. W. Allen was conducting his business under the fictitious name of Allen & Son. His name appears on the declaration of trust signed by an attorney at law who then represented him. Allen received a certificate of beneficial interest in the trust which he did not have at the time of the trial. There was no evidence of the exact contents of this particular certificate nor what had become of it. Allen testified that he did not know of the declaration of trust until after the suit was filed and that he had given his attorney no special authority to sign it. This respondent urges that as the declaration of trust provided for the appointment of agents with large powers for the class B beneficiaries, of which Allen was supposed to be one, his attorney could not delegate his authority and appoint a subagent without special authority so to do. (Sec. 2349, Civ. Code; *Talmadge* v. *Arrowhead Reservoir Co.*, 101 Cal. 367 [35 Pac. 1000]; 1 Cal. Jur. 725, 726.) The appointment of agents to operate and rent the trust property was, from the point of view of class B beneficiaries, a principal object of the trust, for the success of the activities of these agents furnished about the only hope these beneficiaries could entertain of collecting any part of the indebtedness due them. As the attorney had no special authority from Allen, the evidence fails to show due execution of the trust

agreement by him and the judgment in his favor must be affirmed.

As the case must be retried, respondents who may be so advised, should be granted permission to amend their pleadings.

The judgment in favor of Los Angeles Wholesalers' Board of Trade, a corporation, and B. W. Allen is affirmed.

The judgment in favor of the other respondents is reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 21, 1934.