[L. A. No. 16852. In Bank.—January 9, 1939.]

WILLIAM E. LEWIS, Appellant, v. CARL G. JOHNSON et al., Respondents.

Taylor, Kolliner, Bolton & Schwartz and Combs, Fritz & Murphine for Appellant.

W. I. Gilbert, W. I. Gilbert, Jr., and Fred O. Reed for Respondents.

LANGDON, J.—This is an appeal by plaintiff from a judgment based on a directed verdict.

Plaintiff was injured in an automobile accident, and was sent to Seaside Hospital in Long Beach for treatment of fractures in his left leg. The treatment was unsuccessful and the leg was later amputated. Thereafter plaintiff brought the present action for malpractice, against Dr. Carl G. Johnson, Dr. Carl H. Gans, the Seaside Hospital, and Miriam Furlong, superintendent of nurses of the hospital. The complaint alleged negligence of the doctors in using too tight a cast, and negligence of the other defendants in failing promptly to advise the doctors of discovery of this fact.

The case went to trial before a jury on August 13, 1937. While it was in progress, negotiations were commenced between Mr. Quail, claim superintendent for the insurance company representing the hospital and nurse, and Mr. Fritz, one of counsel for plaintiff, the object being to obtain a covenant not to sue said defendants. An agreement was reached to pay $6,000 in consideration of the giving of such a covenant, and on August 23d the money was paid and the instrument delivered. Mr. Fritz then informed Mr. Hunter, counsel for these defendants, that he would give him a dismis-

sal as to them, and accordingly handed him a document entitled "Dismissal", in the usual form of a request to the clerk of the court to enter the dismissal against the said defendants. The attorneys then went to the courtroom, where counsel for the defendant doctors obtained permission to amend their answer to allege that plaintiff had settled with two joint tort-feasors and had thereby released them all. A discussion took place in which Mr. Fritz pointed out that there was no release but only a covenant not to sue. The court called for the document requesting dismissal, and ordered it filed. Thereupon the trial proceeded. On August 27th the motion of defendant doctors for a directed verdict was granted. Judgment for defendants followed, and this appeal was taken.

A review of the record discloses competent evidence sufficient to go to the jury. The fracture in plaintiff's leg was reduced and the cast applied about 10 A. M., Sunday, August 9th. Dr. Johnson visited plaintiff at 11:30 that same morning. He did not see him again, nor communicate in any way, until 8 P. M. When Dr. Johnson left plaintiff on Sunday morning, he gave no instructions to the nurses as to what they should do in an emergency resulting from a tight cast. Meanwhile, in the afternoon, the patient felt such severe pain that narcotics were administered, and his toes appeared swollen and dark blue in color. Dr. Johnson partially split the cast Sunday night, but plaintiff continued to suffer great pain, and the swelling and discoloration continued. The condition of plaintiff's leg became increasingly worse, and required continual treatment with frequent hospitalization, until on June 10th amputation was made.

Dr. Trenery, a properly qualified medical witness for plaintiff, testified in response to a hypothetical question that the care of the plaintiff following the original operation was not up to the standard of care and skill in the locality. He specifically criticized the failure to have constant after-care and observation of the leg when the rigid cast was applied, and testified that provision should have been made to notify the doctor of the changes in condition, which would have made it possible to open the cast must earlier. This expert testimony was enough to make a *prima facie* case, and the cross-examination and conflicting views of defendants' witnesses raised only questions of credibility for the jury. (See *Ross* v. *Hieronymus*, (1934) 2 Cal. App. (2d) 258 [37 Pac.

(2d) 837] ; *Thomason* v. *Hethcock,* (1935) 7 Cal. App. (2d) 634 [46 Pac. (2d) 832] ; *McLennan* v. *Holder,* 1 Cal. App. (2d) 305 [36 Pac. (2d) 448].)

██ Plaintiff called Drs. Chappell and Grant, two additional medical witnesses, fully qualified, who corroborated the testimony of Dr. Trenery that the cause of the injury was a cast which was too tight. These doctors were also asked hypothetical questions as to whether the conduct of defendant surgeon constituted due care, and an offer of proof was made to the effect that they would testify that it was not. The court sustained objections to the questions on the ground that these doctors were currently practicing in Los Angeles, and could not testify as to the standard of care in Long Beach. We can see no justification for such a narrow view. The cities of Long Beach and Los Angeles are both in the same county; they are contiguous communities, both metropolitan in character, and their business centers are only about 25 miles apart. There is reason in the general requirement that the medical expert must be familiar with the standard of care in the particular locality, in order that the standards of widely separated localities with different practices may be excluded. But to make the exclusion rest arbitrarily upon a geographical line separating two cities of the same county, with almost identical kinds of medical service, would be a misuse of the rules of evidence and an unjustifiable emphasis on empty technicalities. Common knowledge, as well as the testimony of the doctors on both sides, tells us that the method used in treating this particular kind of fracture was one in use throughout the world. And there is the evidence offered by Dr. Trenery (admitted) and Dr. Chappell (excluded), to the effect that long prior practice in Los Angeles County, including Long Beach, showed that there was no difference in the treatment in the two communities. Both on principle and under the authorities we are satisfied that the exclusion of the evidence of Drs. Chappell and Grant was error. (See *Turner* v. *Stoker,* (Tex. Civ. App.) 289 S. W. 190; *Geraty* v. *Kaufman,* 115 Conn. 563 [162 Atl. 33] ; *Tennant* v. *Barton,* 164 Wash. 279 [2 Pac. (2d) 735] ; *Sampson* v. *Veenboer,* 252 Mich. 660 [234 N. W. 170].)

██ We may also note the error that was committed in restricting the cross-examination of defendants' expert, Dr. Terry, who testified that the patient's leg was suspended in

a "Bohler Fracture Frame", and that the witness had studied under Dr. Bohler and used his textbook and that his opinion was in part based upon said book. Plaintiff's counsel then sought to cross-examine him by use of Dr. Bohler's book, and the court sustained objection to the impeaching questions. This was improper, for the rule against admission of such works as direct evidence is subject to the qualification that textbooks relied upon by an expert witness may be used as a foundation of impeaching cross-examination. (See *State* v. *Bess,* 60 Mont. 558 [199 Pac. 426]; *Whitley* v. *Stein,* (Mo. App.) 34 S. W. (2d) 998; 3 Wigmore on Evidence, sec. 1700.)

There were other errors in the exclusion of evidence and restriction of cross-examination which we do not find it necessary to discuss.

■ On the hearing in this court defendants rely chiefly on the contention that the four defendants were sued as joint tort-feasors, and that the agreement resulting in the dismissal of the hospital and nurse destroyed plaintiff's cause of action against the other two defendants. They seek to uphold the trial court's decision on the theory that the agreement constituted a *release,* and that the dismissal amounted to a *retraxit.* Under well-settled principles this view is untenable.

The agreement was entitled "Covenant Not to Sue and Covenant Not to Sue Further;" it recites that the named defendants desire "an agreement and covenant not to sue and a covenant not to sue them or either of them further", or prosecute "any suit or suits now pending against them"; it states that plaintiff "promises and agrees that he will not sue and/or sue further" the said defendants, and that he covenants and agrees to hold them harmless from any liability arising out of the accident or treatment; it concludes by stating that plaintiff does not waive any claims against others. This instrument was unmistakably intended to constitute a covenant not to sue. "Its language is of covenant and indemnity, not of release." (*Kincheloe* v. *Retail Credit Co.,* 4 Cal. (2d) 21, 23 [46 Pac. (2d) 971].) Unlike a release, a covenant not to sue one joint tort-feasor does not relieve the others. (*Kincheloe* v. *Retail Credit Co., supra; Cowles* v. *Independent Elevator Co.,* 22 Cal. App. (2d) 109 [70 Pac. (2d) 711]; see, also, *Hawber* v. *Raley,* 92 Cal. App. 701 [268

Pac. 943]; *Charleville* v. *Metropolitan Trust Co.*, 136 Cal. App. 349 [29 Pac. (2d) 241].)

Since the agreement did not operate to release the other tort-feasors, plaintiff's voluntary act in requesting the clerk to dismiss as to the first two could not possibly have this effect. There is a well-recognized distinction between a dismissal voluntarily made by the clerk's entry, which is presumed to be without prejudice to the bringing of another action, and a dismissal entered in open court pursuant to stipulation, which is ordinarily effective as a *retraxit*. In the absence of such stipulation or motion addressed to the court, there is no *retraxit*. (*Breznikar* v. *Topper Co.*, 23 Cal. App. (2d) 298 [72 Pac. (2d) 895]; *Lamb* v. *Herndon*, 97 Cal. App. 193 [275 Pac. 503]; *Stoutenborough* v. *Board of Education*, 104 Cal. 664, 667 [38 Pac. 449]; *Shippy* v. *Peninsula Rapid Transit Co.*, 97 Cal. App. 367 [275 Pac. 515].)

The cases relied upon by defendants deal with instruments properly construed to be releases, and their reply brief frankly states: "We readily concede that if this document (the covenant) under the circumstances is but a covenant not to sue, then it can avail these defendants nothing."

The judgment is reversed.

Shenk, J., Curtis, J., Waste, C. J., Seawell, J., and Houser, J., concurred.

Rehearing denied.