CHARLES SHERIDAN *v.* SIDNEY S. QUARRIER.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued October 8—decided November 6, 1940.

*James E. Cannon,* with whom was *Raymond J. Cannon,* for the appellant (plaintiff).

*Cyril Coleman,* for the appellee (defendant).

ELLS, J. The question at issue is whether, under the facts of the case, the defendant, a surgeon on the surgical staff of the Hartford Hospital, who was present at and assisted in an operation performed upon a ward patient by an interne, owed the duty of aftercare following the operation.

The finding states the following facts: The defendant, a licensed physician and surgeon, was an assistant surgeon on the staff of the hospital. The plaintiff was a ward patient, that is, one who pays for his hospital care but receives free of charge medical and surgical care from members of the hospital staff. The chief of the hospital staff designated an interne to amputate the plaintiff's left little toe, and designated the defendant to be present and assist. The operation was performed and was a very simple one, and the resulting open wound was "packed" by the interne, that is, a strip of vaseline gauze six inches long and two inches wide folded three or four times

into a two inch square piece was applied to the wound and the entire foot bound up with plain gauze. The patient was returned to the ward "where the aftercare was in the hands of surgeons assigned to the ward by the chief of staff." On the day following the operation the interne removed the vasoline gauze. About three weeks later the patient was discharged from the hospital. The wound had healed fairly well, but there was still a small amount of discharge from the stump. A few days later an area began to ulcerate and was probed by the plaintiff's personal physician. The area around the amputation had been dressed with gauze dressings at least once a day from the date of his discharge, to April 23d, by various persons,—his new physician, a nurse, the plaintiff, his wife, and his brother-in-law. On April 25th a piece of tightly rolled decayed gauze which had been inserted at the operation and not thereafter removed was taken from the wound. The infection spread, and caused serious injury. It was further found that the defendant "except for being present at the operation had no connection with the plaintiff's care or treatment." Upon these facts the trial court concluded that the defendant was not under any duty to care for or treat the plaintiff after the operation.

The plaintiff had the burden of proving that the defendant failed to exercise that degree of care, skill and diligence ordinarily had and exercised by physicians and surgeons engaged in the same line of practice in the general neighborhood of Hartford. *Geraty* v. *Kaufman*, 115 Conn. 563, 572, 573, 162 Atl. 33. If there was negligence constituting malpractice it occurred during the aftercare. No claim is made that there was negligence in connection with the operation itself, which was the only connection the defendant had with the patient's care or treatment. Therefore

the plaintiff must prove that there was a legal obligation on the part of Dr. Quarrier to treat the patient after the operation and that he failed in that duty. The facts found do not indicate that there was such proof; they show that there was no such duty. The defendant was assigned to the case for the sole purpose of assisting in the operation itself. The aftercare was in the hands of other surgeons assigned to the ward by the chief of staff. The defendant was on duty in the women's ward only, and had no connection with the aftercare of this patient. Upon these facts, as the trial court aptly stated, "the only sound and reasonable conclusion is that defendant's duty ended with his service in the ward. No other holding would be consonant with the exigencies of the modern hospital set-up."

The plaintiff's argument assumes that the patient and the defendant entered into a contract whereby this defendant agreed to treat and care for the plaintiff's condition during his hospitalization, and cases are cited holding that the physician is bound to continue treatment as long as the contract is in force. This assumption runs contrary to the facts found in this case, which disclose that the undertaking of the defendant was limited to assistance at the operation. The cases cited are not in point.

The principal claim made in the plaintiff's assignments of error was that the defendant was under a duty to either remove the pack himself, within a reasonable time after the operation, or by examination see that someone else removed it. That duty could be established by expert evidence as to the practice of surgeons in the community in like cases, and that in such cases the operating surgeon also personally performed the aftercare, by which the basis would be laid for a finding of neglect by a defendant who had not

conformed to the general practice; or the plaintiff might rely on the only generally recognized exception to this rule, and upon mere proof of the facts of the doctor's treatment or lack of it claim that those facts established "such obvious gross want of care or skill as to afford, of itself, an almost conclusive inference and dispense with the testimony by expert witnesses." *Slimak* v. *Foster,* 106 Conn. 366, 370, 138 Atl. 153. As we have stated, there is not a suggestion in the finding that in failing to remove the gauze personally or in failing to give personal aftercare or supervision the defendant fell below the standards set by the profession in similar circumstances.

The plaintiff is left with the claim that because Dr. Quarrier was present and assisted at the operation he was guilty of obvious and gross misconduct in permitting the aftercare to pass into the hands of other licensed physicians and surgeons. We adopt the reasoning of *Hunner* v. *Stevenson,* 122 Md. 40, 89 Atl. 418, where the court said (p. 58): "The theory of the defendant on the main question is thus stated in the brief filed in his behalf. 'That an operating surgeon at a hospital of repute, in the case of a wound left open, is not liable for the negligence of hospital surgeons, nurses or internes, in the after dressings of such wounds, if such operating surgeon is without knowledge of, or not privy to, such negligence.' At this day when it is well known that there are physicians and surgeons of special skill in particular branches of their profession, it could not safely be announced as a general rule of law, applicable to such cases as this, that a surgeon who performs an operation is liable for the negligence of other physicians, nurses or internes in hospitals in the after treatment, unless he specially undertakes such employment." For an interesting discussion of the position of the operating surgeon and

an exhaustive citation of cases, see *Hohenthal* v. *Smith*, 72 App. D. C. 343, 114 Fed. (2d) 494, which is reported and annotated 4 C. C. H. Negligence Cases (other than automobile) 256.

We conclude that in the absence of facts tending to show that there was a contractual duty on the part of the defendant to furnish aftercare, or that, under the situation disclosed, the relationship of doctor and patient carried with it the duty of aftercare, the defendant was entitled to follow the hospital system which, as the finding shows, divorced the operation from the aftercare, and put the aftercare in the hands of other surgeons.

The plaintiff's brief repeatedly makes the claim that the condition of the toe was called to the defendant's attention by an interne a week after the operation. The finding is devoid of this claimed fact, and it cannot be considered by us. The defendant's special defense, to the effect that the defendant's services to the plaintiff were charitable in that he performed them without charge, was abandoned. The conclusion we have reached makes it unnecessary to decide whether some other physician, or the hospital, was guilty of actionable negligence. Dr. Quarrier was not.

There is no error.

In this opinion the other judges concurred.